56 P.3d 1006 (2002)
Jean M. OWEN, as ExPR of the Estate of Glenn and Margie Nelson, deceased, and Jean Owen, personally, Appellant,
v.
BURLINGTON NORTHERN SANTA FE RAILROAD, INC., City of Tukwila and State of Washington, Respondents.
No. 48093-6-I.
Court of Appeals of Washington, Division 1.
November 4, 2002.
Reconsideration Denied December 24, 2002.
*1008 Mark Conlin Jobson, Assistant Attorney General, Office of the Atty. Gen. Torts, Olympia, WA, for Respondents, State of Washington.
Brian Paul Russell, Attorney At Law, Seattle, WA, for Appellant, Jean Owen.
Brenda Louise Bannon, Andrew George Cooley, Keating, Bucklin & McCormack, Seattle, for Burlington Northern Railroad.
*1007 BECKER, C.J.
Glenn and Margie Nelson were killed when a train collided with their vehicle at a railroad crossing in Tukwila. The City of Tukwila and the State of Washington, sued for wrongful death by the Nelsons' daughter, Jean Owen, were dismissed on summary judgment. Because Owen supplied sufficient evidence that Tukwila was negligent with respect to traffic control measures at the intersection, we reverse the order dismissing Tukwila. The order dismissing the State is affirmed in view of the lack of any argument or authority establishing a duty.
An appellate court reviews summary judgment de novo, performing the same inquiry as the trial court. Herron v. Tribune Publ'g Co., Inc., 108 Wash.2d 162, 169, 736 P.2d 249 (1987). A motion for summary judgment may be granted only if there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. CR 56(c); Wilson v. Steinbach, 98 Wash.2d 434, 437, 656 P.2d 1030 (1982). All reasonable inferences from the facts must be considered in the light most favorable to the nonmoving party. Scott v. Pacific West Mt. Resort, 119 Wash.2d 484, 502, 834 P.2d 6 (1992). It is the responsibility of the moving party to raise in its summary judgment motion all of the issues on which it believes it is entitled to summary judgment. White v. Kent Medical Center, 61 Wash.App. 163, 168, 810 P.2d 4 (1991).
The railroad crossing where the accident occurred consists of two sets of Burlington Northern tracks running parallel to each other, just inside the city limits of Tukwila. The tracks cross South 180th Street, which is a four-lane arterial connecting the East Valley Highway with State Route 181, the West Valley Highway.[1] Westbound drivers on the arterial see various warnings as they approach the crossing. The warnings include the large white letters "X" and "RR" on the pavement; yellow railroad crossing signs; a crossbuck sign that says "RAILROAD CROSSING"; a sign that says "2 TRACKS"; and another sign that says "DO NOT STOP ON THE TRACKS". The roadway rises for westbound travelers as they approach the crossing. Photographs suggest that it is difficult for drivers at that point to see the traffic lights and congestion west of the crossing.[2]
A short distance past the two sets of Burlington Northern tracks, westbound drivers encounter another north-south railroad track, this one belonging to Union Pacific. Another 530 feet west[3] of the Union Pacific tracks is an intersection with 72nd Avenue South. An intersection with the West Valley Highway is 450 feet further west.[4] There are traffic *1009 lights at both intersections. These traffic lights routinely cause westbound traffic to stop and back up. Due to the high volume of traffic destined for the West Valley Highway, backups sometimes extend as far as one-third of a mile east of the crossing, with vehicles stopped on the tracks.
The accident occurred shortly after 4 p.m. on a Friday afternoon in June, 1998. Glenn Nelson was driving his wife home from a doctor's appointment in Renton. Their route was west on South 180th Street. The rush hour traffic was heavy. As the Nelsons approached the Burlington Northern crossing, their line of traffic was moving across the tracks. However, as they drove on to the Burlington Northern tracks, traffic came to a stop. The Nelsons' car stopped on the first set of tracks with vehicles located directly in front of and behind it.
The pick-up truck ahead of the Nelsons was stopped on the second set of Burlington Northern tracks. The driver of the pick-up saw a train approaching on those tracks and heard its whistle, and pulled forward off the tracks.[5] Within moments, flashing light signals activated and bells began to ring, signaling the presence of an approaching train. These signals are programmed to provide a 20-second warning before an approaching train reaches the crossing. The automatic, reflectorized crossing arms came down, surrounding several vehicles stopped on the tracks. The Nelsons' car moved in the same direction as the pick-up, but stopped again on the second set of tracks. The Nelsons, aged 75 and 76, remained belted into their vehicle. The train struck the vehicle, and they were killed.
The Nelsons' daughter, Jean Owen, sued Burlington Northern, the City of Tukwila, and the State of Washington for wrongful death.[6] She settled with Burlington Northern. The trial court dismissed Tukwila and the State on summary judgment. Owen appeals from the orders dismissing those two defendants.

TUKWILA
We first address the order dismissing the City of Tukwila. As to Tukwila, Owen alleged in her complaint that the intersection of South 180th Street with the Burlington Northern tracks was negligently designed and maintained. She alleged that it constituted a "hazard and a trap" and "an unreasonably dangerous threat of harm" due to the location of the traffic signals and the heavy traffic. She alleged that Tukwila had breached its duty to maintain its streets in a safe condition by failing to properly install all traffic signals and provide adequate warning of the hazards. She specifically alleged that Tukwila "failed to adjust the traffic control devices to the proper time intervals between the lights, traffic and the Burlington Northern crossing ... to prevent an unreasonably hazardous condition."[7]

A. Negligence of Plaintiffs
The City of Tukwila's memorandum in support of its motion for summary judgment below, and its brief in this court, are devoted almost entirely to the legally erroneous argument that a municipality owes no duty to negligent drivers. The City recites its allegations of negligence on the part of the Nelsons: Glenn Nelson failed to obey the signs warning him not to stop on the tracks; he failed to look and listen; he failed to yield the right of way to the train; he and his passenger failed to exercise ordinary care for their own safety when they stayed in their car instead of getting out of the way. According to the City, the Nelsons' negligence removed them "from the class of persons to whom the City owes a duty".[8]
A municipality "owes a duty to all persons, whether negligent or fault-free, to build and maintain its roadways in a condition that is reasonably safe for ordinary travel." Keller v. City of Spokane, 146 Wash.2d 237, 249, 44 P.3d 845 (2002). Undisputed facts showing that the Nelsons were negligent are not enough to excuse the City from *1010 its duty and do not justify the order of dismissal.

B. Traffic Control Duty
The City's motion below set forth a second basis for summary judgment when it alleged that the City could not be liable for failing to install apparatus not required by law.[9] Owen responded that Tukwila negligently failed to install additional warnings and traffic control measures, such as a signal preemption mechanism that would cause the traffic signals west of the crossing to turn green upon the approach of the train in order to disperse the traffic at the crossing.
Defending its position on this issue on appeal, the City first argues that it had no responsibility for the signals.
Plaintiff's evidence does not demonstrate a breach of a legal duty by Tukwila. All of the complained of traffic control devices and crossing apparatus are owned by Kent, Renton, and Burlington Northern Railroad. Any additional advanced warning signs to theoretically benefit the Nelsons would have had to be installed by Renton.[[10]]
But both signals are located within the city limits of Tukwila. A local government entity such as Tukwila is required to place and maintain such traffic control devices as are necessary to regulate, warn and guide traffic. RCW 47.36.060. According to an interlocal agreement executed in 1992, Tukwila contracted with the City of Kent to construct the traffic signal at 72nd Avenue South and South 180th Street, after which the City of Tukwila agreed to assume the operation and maintenance of the signal.[11] The declaration of Tukwila's public works director, engineer Jim Morrow, asserts that Kent continues to own and operate the signal,[12] but such an assertion does not conclusively establish the non-liability of Tukwila for a signal located within its jurisdiction. Similarly, it is immaterial that the State of Washington constructed the signal at the intersection of State Route 181 and South 180th Street. The State transferred the ownership, maintenance and operational responsibilities of the signal to the City of Tukwila by agreement in 1990.[13]
Tukwila also argues that the decision and implementation of a preemption mechanism are solely within the control of Burlington Northern. The Manual on Uniform Traffic Control Devices, published by the United States Department of Transportation, has been adopted by the Washington State Highway Commission under the authority of RCW 47.36.020.[14] Section 8A-1 of the manual sets forth the applicable standards for traffic signals and warning devices at or near railroad crossings. It provides, in relevant part, for a municipality to have joint responsibility with the railroad:
[T]he highway agency and the railroad company are entitled to jointly occupy the right-of-way in the conduct of their assigned duties. This requires joint responsibility in the traffic control function between the public agency and the railroad. The determination of need and selection of devices at a grade crossing is made by the public agency with jurisdictional authority.[[15]]
If the circumstances at the crossing called for signal preemption or other improvements in the traffic control devices, Tukwila's involvement would be essential to bringing such improvements about. We conclude that Tukwila had sufficient control over the circumstances at the crossing so as to incur the traffic control duties set forth in the Manual on Uniform Traffic Control Devices.
With respect to this issue, the City submitted a declaration from public works director Morrow and excerpts from the Manual on Uniform Traffic Control Devices. Morrow discussed Tukwila's statutory duty *1011 regarding signal preemption as set forth in the manual. The manual states that "the normal sequence of highway intersection signal indications should be preempted upon approach of trains to avoid entrapment of vehicles on the crossing by conflicting aspects of the highway traffic signals and the grade crossing signals".[16] This section also states, "Except under unusual circumstances, preemption should be limited to the highway intersection traffic signals within 200 feet of the grade crossing."[17] Morrow asserted that the nearest traffic signal, the one at 72nd South, was 660 feet away from the eastern edge of the Union Pacific crossing. He stated a conclusory opinion that the City had fulfilled its statutory duty. "The location of 72nd Avenue South and the West Valley Highway intersections, and their associated traffic signals are likewise in compliance with Section 8(c) of the Manual on Uniform Traffic Control Devices, as they relate to traffic control systems and railroad-highway grade crossings."[18] Morrow did not address the exception for "unusual circumstances." He declared that the traffic controls were in compliance with reasonable engineering principles. He did not address the plaintiff's contention in her complaint that the crossing was unreasonably dangerous or hazardous.
On appeal, the City claims it is uncontroverted that the Manual on Uniform Traffic Control Devices did not require Tukwila to arrange for preemption of the signals. But the record shows that Owen did controvert Morrow's assertion. She argued that unusual circumstances were present due to the heavy traffic flows on South 180th Street, the location of the two traffic signals, and the history of frequent backups and entrapment of vehicles on the crossing.[19] In support of this argument she submitted declarations from a number of witnesses who had seen the traffic back up across the tracks at various times, and photographs of the crossing. She also submitted a declaration of John Glennon, a civil engineer consulting in highway safety measures. Glennon had visited the site, and had reviewed Jim Morrow's declaration as well as photographs of the accident site and witness statements. His declaration stated:
Commonly accepted traffic engineering practice recognizes the need for extraordinary traffic control measures to counteract the hazard associated with frequent queuing of traffic across railroad crossings that have substantial numbers of high speed trains on multiple tracks.
The subject railroad crossing has three active tracks with substantial high-speed train traffic. The subject railroad crossing has a high traffic volume that, because of nearby intersections, commonly queues over the railroad crossing. Because an approaching train does not pre-empt the nearby traffic signals, the probability of having vehicles trapped on the tracks with an approaching train is relatively high.[[20]]
The City claims that Glennon's declaration was "speculative and without factual basis", like the declaration of an expert held to be inadmissible in Miller v. Likins, 109 Wash. App. 140, 147-150, 34 P.3d 835 (2001). In Miller, a vehicle ran into a teenage skateboarder. The plaintiff offered testimony of an accident reconstruction expert to show the relative locations of the parties when the accident occurred, but the expert conceded he had not independently developed a factual basis for determining the point of impact; instead he relied on the declaration of an eyewitness. Glennon's opinion in this case, in contrast, was not offered to reconstruct the accident, but to counter Morrow's assertion that the devices controlling traffic at the crossing were in compliance with the law and reasonable engineering principles. Glennon's opinion was based on facts that were already in the record. These facts included Morrow's description of the crossing and Glennon's own visit to the site; Morrow's acknowledgement that it was "a highly traveled crossing, by both train and vehicular *1012 traffic"[21]; Morrow's presentation of section 8(c) of the Manual on Uniform Traffic Control Devices, including its exception for unusual circumstances; and the declarations by numerous eyewitnesses concerning traffic stopped on the tracks in lengthy backups caused by the traffic lights. Glennon, to have his expert opinion duly considered in response to the City's motion, could properly review and rely upon these facts supplied by other witnesses.
Owen offered a more detailed declaration by Glennon when she moved for reconsideration of order on summary judgment. The court initially rejected this submission as untimely.[22] Later, however, the court entered an order clarifying that it had considered Glennon's Reply Declaration, but found that it did not raise issues of fact to support the plaintiff's motion for reconsideration.[23] Because the trial court considered Glennon's second declaration, this court may also consider it as part of Owen's opposition to the City's motion. Weatherbee v. Gustafson, 64 Wash.App. 128, 133 n. 1, 822 P.2d 1257 (1992). We conclude that Glennon's declarations were not speculative, and were not untimely.
The burden was upon the City to demonstrate from the record the absence of a material issue of fact with respect to the City's statutory duty under the Manual on Uniform Traffic Control Devices. The City attempted to do so in its moving papers by showing that the intersection was more than 200 feet from the crossing. Absent unusual circumstances, 200 feet is the limit beyond which a City has no duty under section 8(c) of the Manual on Uniform Traffic Control Devices to consider preemption. Owen responded by pointing to facts from which a jury could find that the conditions of the crossing amounted to unusual circumstances calling for preemption of the traffic signal controlsthe multiple tracks, the high volume of traffic, and the fact that drivers in queuing traffic not infrequently became trapped on the crossing. Glennon's opinion added the weight of expertise to Owen's response. But even without his declarations the record supplies sufficient evidence from which a reasonable jury could conclude that unusual circumstances were present at the crossing, requiring more than normal signage and warnings to prevent motorists from being trapped in the path of an approaching train. See Grimsrud v. State, 63 Wash.App. 546, 550-51, 821 P.2d 513 (1991) (Where the Manual on Uniform Traffic Control Devices does not resolve the factual issue of whether motorists were adequately warned of abrupt lane edges, that question is for the trier of fact.); see also Petersen v. State, 100 Wash.2d 421, 437, 671 P.2d 230 (1983) ("As a general proposition, expert testimony is not required to establish a standard of care in an action for negligence."). We conclude that Owen raised a factual issue with respect to Tukwila's breach of its duties under the Manual on Uniform Traffic Control Devices.

C. Grade Separation Project
Owen also contends that Tukwila negligently failed to construct an underpass separating the grades of the railway and the street. Owen contends that the need for grade separation was self evident by the "Grade Crossing Diagnostic Project," a report that listed the improvement in a section titled "Proposed Upgrades". The impetus for the Diagnostic Project was to study highway safety issues associated with the expected increase in rail traffic from the proposed addition of commuter rail (Sound Transit). The study identified safety issues along the Burlington Northern corridor, identified possible improvements, and coordinated with multiple jurisdictions to select cost effective safety improvements.[24] Under the section "Proposed Upgrades," the report stated that the South 180th Street crossing had been selected for a "high priority FAST TRACK grade separation project" as well as being recommended for preemption of traffic control devices and additional signing "to prevent motorist from being caught between tracks when the gates are in the down position".[25] *1013 The record does not elucidate what entity "FAST TRACK" is and whether Tukwila is a part of it or would be responsible for constructing the underpass. Moreover, the report did not purport to establish legal duties. This report does not establish negligence on Tukwila's part for failing to have an underpass in place at the time of the accident.

D. Inherently Dangerous Condition
As part of its duty to maintain its roads in a condition reasonably safe for ordinary travel, a governmental entity has a duty to post adequate and appropriate warning signs either when required by law, or when the situation is inherently dangerous or misleading. Provins v. Bevis, 70 Wash.2d 131, 138, 422 P.2d 505 (1967); Bradshaw v. Seattle, 43 Wash.2d 766, 775, 264 P.2d 265 (1953).
The City, in its opening brief below, did not attempt to establish the absence of evidence proving the street to be inherently dangerous or misleading where it crosses the tracks. It was Owen who first raised that issue in her response to Tukwila's summary judgment motion. Owen cited Provins to make the point that the Manual on Uniform Traffic Control Devices is not the only source of a city's duty to post adequate signs. Owen argued that the crossing was deceptive because it blocked views of the traffic signals and stalled traffic west of the crossing, creating a situation in which cars could be trapped between the railroad crossing arms when trains approached.[26]
In rebuttal, the City arguedas it does on appealthat Owen failed to establish that the crossing is inherently dangerous because she did not supply an expert opinion stating that the crossing is inherently dangerous. Whatever the merits of this argument may be, the City did not present the issue to the trial court in its original motion. "Allowing the moving party to raise new issues in its rebuttal materials is improper because the nonmoving party has no opportunity to respond." White v. Kent Medical Center, 61 Wash.App. 163, 168, 810 P.2d 4 (1991). Whether Owen has enough evidence to prove the crossing inherently dangerous or misleading is an issue not properly before us, and accordingly, we do not address it.

CAUSATION
Similarly, we decline to consider the City's suggestion[27] that the summary judgment can be affirmed on the basis that Owen presented no evidence of proximate cause. There are two elements to proximate cause: cause in fact and legal causation. Medrano v. Schwendeman, 66 Wash.App. 607, 611, 836 P.2d 833 (1992). In its opening brief before this court, the City appears to be addressing the lack of evidence of cause in fact, citing Miller v. Likins, 109 Wash.App. at 145, 34 P.3d 835. But the City's motion for summary judgment did not put cause in fact at issue, and therefore Owen cannot be faulted for failing to submit evidence of cause in fact. The only reference to proximate cause in the City's opening memorandum below is a footnote arguing lack of legal causation. The City argued that Glenn Nelson's negligence, as a matter of law, superseded any negligence of Tukwila.[28] The City cited Medrano and other cases in which the courts have refused to impose liability on defendants as a matter of policy. Such cases typically involve extremely reckless, speeding and usually intoxicated drivers as plaintiffs or plaintiffs' decedents. The City has not pursued its legal causation argument on appeal.

THE STATE
Owen contends that the arguments she advances against Tukwila apply equally to the State. But the State correctly points out that she has failed to establish any duty owed by the State to the Nelsons. She has pointed to no evidence showing that the streets, the traffic controls at the crossing, or the crossing itself, were owned, operated, or maintained by the State. Owen offers no *1014 authority establishing any other basis for a duty of care owed by the State to the Nelsons in this circumstance. We affirm the order dismissing the State.

DISCOVERY RULINGS
Owen separately assigns error to the trial court's failure to grant her motion to compel discovery, set for hearing on the same day as Tukwila's motion for summary judgment, and the denial of her CR 56(f) motion for a continuance. These issues are moot, at least as to Owen's cause of action against Tukwila, as a result of our reversal of the order of summary judgment pertaining to Tukwila. And Owen has not shown that the discovery she claims was still outstanding had anything to do with her case against the State of Washington. Accordingly, we do not address the issues raised by this assignment of error.
The order dismissing the State of Washington is affirmed. The order dismissing the City of Tukwila is reversed.
ELLINGTON, J., concurs.
BAKER, J. (dissenting).
The thrust of plaintiff's argument on appeal is that Tukwila should have separated the railroad crossing from vehicular cross traffic by means of an underpass. As the majority acknowledges, that argument has no merit. Yet the majority seizes upon a vague assertion that perhaps something could have been done to preempt traffic signals 1/8 of a mile beyond the crossing so as to prevent such accidents, and on that basis reverses the summary judgment granted by the trial court. There is no authority or precedent establishing such a duty on the part of a municipality. I therefore respectfully dissent.
Negligence requires a legal duty owed to the plaintiff, a breach of that duty, and that the breach be the proximate cause of the injury.[29] The city's duty was to maintain the streets in a reasonably safe manner. Owen alleges that the city breached that duty by not preempting the traffic lights on South 180th Street. Owen presents no case, treatise, publication, or expert that even infers that Tukwila should have preempted stop lights 1/8 of a mile from the tracks.[30] Owen only cites to the Manual on Uniform Traffic Control Devices (MUTCD), which cautions against preemption when traffic signals are greater than 200 feet from tracks except in "exceptional circumstances." Owen then argues that the danger presented by this crossing is one such "exceptional circumstance." To infer from this cautionary statement that Tukwila has a duty to preempt a set of traffic signals over three times further than the distance recommended by the MUTCD is unsupported by cases, relevant literature, or common sense.
When a train approaches an intersection that utilizes an active traffic control system, the train trips a closed circuit switch that activates the crossing gates, lights, and bells at the crossing. This activation must occur at least 20 seconds before the train crosses the intersection.[31] When the train trips the closed circuit switch, traffic signals may also be preempted. Signal preemption involves overriding traffic signals to control the traffic flow surrounding a train crossing. The MUTCD recommends, but does not require, signal preemption when traffic signals are *1015 within 200 feet of an active crossing.[32] The purpose of this signal preemption is to clear any vehicles off the track.
However, the MUTCD cautions against using preemption for signals further than 200 feet from the crossing.[33] Because there is only a 20 second warning of an approaching train, the further away the signal is from the tracks, the less likely that preemption will have an effect on the traffic at the crossing. It is sheer speculation to assume that preempting signals so far removed from the railway crossing would allow substantial traffic to simply proceed onto South 180th Street during rush hour traffic, or not cause other problems with traffic on the affected cross streets. Judges and juries are not traffic engineers, and neither should speculate about possible effects from tampering with one portion of an integrated traffic control system.
Here, the approach to the tracks was in Renton. The crossing was regulated by an active control device that contained flashing lights, warning bells, and automatic gates. Signs were posted warning drivers of the crossing. Signs instructed drivers not to stop in the crossing. The railroad crossing had proper crossbucks with reflective paint. The crossing complied with all state and federal requirements.
Further, in this case there is no question that the driver did not obey the conspicuously placed signs warning vehicles to not stop on the crossing. Our Supreme Court has stated that a municipality's duty to maintain a roadway may require the posting of warning signs if the maintenance of such signs is prescribed by law or if the road's conditions are "inherently dangerous or of such character as to mislead a traveler exercising reasonable care."[34] Here, Renton and the railroad were required to post warning signs and signals. They did, in compliance with the MUTCD, State, and federal requirements. The nearest stop light after the crossing was in Tukwila, 660 feet beyond the crossing. There is no evidence that the light malfunctioned, worked improperly, or failed to comply with the MUTCD.
The plaintiff's expert, Dr. John Glennon, suggests preemption when there are traffic signals near a train crossing. However, his suggestion does not create a duty by Tukwila on these facts. Washington does not require a municipality to anticipate and protect against all imaginable negligent acts.[35] Rather, this state defines the duty of a municipality as an obligation to maintain its roadways in a condition reasonably safe for ordinary travel.[36] The plaintiff failed to establish a breach of Tukwila's duty by failing to preempt lights 460 feet beyond what is recommended by the MUTCD.
In argument, Owen conceded that no experts or lay persons testified that if the signals were timed, the accident would not have occurred. Although proximate cause is not an issue properly before this court, it bears on the current discussion. Before this court burdens a municipality with a duty as extreme as the one the majority imposes, there should be at least some evidence of a connection between the alleged duty and the injury. Owen admitted that it was "somewhat speculative" that had Tukwila implemented signal preemption, the accident would not have occurred.
Because Owen failed to establish that Tukwila had a duty to preempt its traffic signals three times beyond the distance recommended in the MUTCD, summary judgment was proper. Accordingly, I respectfully dissent.
NOTES
[1] Before it crosses into Tukwila from Renton, the arterial is known as southwest 43rd Street.
[2] Clerk's Papers at 62-91.
[3] Clerk's Papers at 663.
[4] Clerk's Papers at 557.
[5] Clerk's Papers at 547.
[6] Clerk's Papers at 10.
[7] Clerk's Papers at 9.
[8] Clerk's Papers at 835.
[9] Clerk's Papers at 842.
[10] Respondent Tukwila's Brief at 21 (citations omitted).
[11] Clerk's Papers at 780.
[12] Clerk's Papers at 16.
[13] Clerk's Papers at 783.
[14] Clerk's Papers at 16; RCW 47.36.060.
[15] Clerk's Papers at 792.
[16] Clerk's Papers at 796.
[17] Clerk's Papers at 797.
[18] Clerk's Papers at 16-17.
[19] Clerk's Papers at 585.
[20] Clerk's Papers at 97.
[21] Clerk's Papers at 15.
[22] Clerk's papers at 435-46.
[23] Clerk's papers at 440-41.
[24] Clerk's Papers at 105-07.
[25] Clerk's Papers at 114.
[26] Clerk's Papers at 579-81.
[27] See Brief of Appellant at 11; 17-18.
[28] Clerk's Papers at 583, n. 2.
[29] Hertog v. City of Seattle, 138 Wash.2d 265, 275, 979 P.2d 400 (1999).
[30] Owen's expert, Dr. John Glennon, stated that "[b]ecause an approaching train does not preempt the nearby traffic signals, the probability of having vehicles trapped on the tracks with an approaching train is relatively high." However, he did not state that Tukwila should have preempted the signal. Significantly, in James R. Loumiet, B.S.M.E. & William G. Jungbauer, Train Accident Reconstruction and FELA & Railroad Litigation 186-87 (3d ed.1998), Glennon discusses signal preemption, and advocates preemption in situations where there is an actively controlled crossing within 75 feet of a signal. He does not suggest preemption at distances greater than those in the Manual on Uniform Traffic Control Devices (MUTCD). Loumiet & Jungbauer, supra, at 168.
[31] See Manual on Uniform Traffic Control Devices (MUTCD) § 8C-5 (2d ed. 1988) ("On tracks where trains operate at speeds of 20 mph or higher, circuits controlling automatic flashing light signals shall provide for a minimum operation of 20 seconds before arrival of any train on such track.").
[32] An active crossing contains automatic gates, lights, and bells, while a passive crossing only contains warning signs.
[33] "Except under unusual circumstances, preemption should be limited to the highway intersection traffic signals within 200 feet of the grade crossing." MUTCD § 8C-6.
[34] Ruff v. County of King, 125 Wash.2d 697, 705, 887 P.2d 886 (1995).
[35] Ruff, 125 Wash.2d at 705, 887 P.2d 886 (citing Stewart v. State, 92 Wash.2d 285, 299, 597 P.2d 101 (1979)).
[36] Keller v. City of Spokane, 146 Wash.2d 237, 249, 44 P.3d 845 (2002).