[No. 73621-9. En Banc.]
Argued January 15, 2004.    Decided March 24, 2005.

JEAN M. OWEN, *Individually and as Personal Representative, Respondent*, v. BURLINGTON NORTHERN SANTA FE RAILROAD COMPANY, *Defendant*, THE CITY OF TUKWILA, *Petitioner*.

ALEXANDER, C.J., and MADSEN, BRIDGE, and FAIRHURST, JJ., dissent by separate opinion; J.M. JOHNSON, J., did not participate in the disposition of this case.

*Brenda L. Bannon* (of *Keating , Bucklin & McCormack, Inc., P.S.*), for petitioner.

*Brian P. Russell* (of *Christie & Russell*), for respondent.

*Daniel B. Heid, Charles C. Parker*, and *Thomas S. Sheehan* on behalf of City of Seattle, amicus curiae.

*Daniel B. Heid* and *Charles C. Parker* on behalf of King County and Washington Association of Municipal Attorneys, amici curiae.

*Debra L.W. Stephens* and *Bryan P. Harnetiaux* on behalf of Washington State Trial Lawyers Association Foundation, amicus curiae.

¶1 CHAMBERS, J. — Glenn and Margie Nelson were killed in a car-train collision at a railroad grade crossing in Tukwila, Washington. Their daughter, Jean Owen, brought a wrongful death action against the State of Washington, Burlington Northern and Santa Fe Railroad Company, and the city of Tukwila on behalf of her parents. Burlington Northern settled, and on summary judgment, the action against both the city and the State was dismissed by the King County Superior Court. Division One of the Court of Appeals affirmed the dismissal of the suit against the State but reversed the order dismissing the city of Tukwila. Owen petitioned this court for discretionary review of the dismissal of the suit against the State, and the city of Tukwila cross-petitioned for review of the Court of Appeals' reinstatement of Owen's claim against it. We denied Owen's petition for review and accepted the city of Tukwila's cross-petition for review on September 5, 2003. We conclude that there are genuine and material facts as to whether the

roadway was maintained in a reasonably safe condition for ordinary travel. Therefore, we affirm the Court of Appeals and remand for further proceedings consistent with this opinion.

## FACTS

¶2 The fatal accident occurred at the intersection of South 180th Street and a set of Burlington Northern and Santa Fe Railroad Company (BNSF) railroad tracks in Tukwila, Washington. Three sets of railroad tracks intersect South 180th Street near the site of the accident. The eastern and middle sets of tracks are owned by BNSF, and the western set of tracks is owned by Union Pacific. West of the railroad tracks, South 180th Street intersects with 72nd Avenue South and the West Valley Highway. Both intersections are controlled by traffic signals. There is a crown in the road as it intersects with the railroad tracks, which allegedly limits westbound drivers' view of the traffic signals and any approaching trains. South 180th Street is a heavily traveled four lane road, and the three railroad tracks that intersect it are also heavily used by high-speed trains.

¶3 Glenn and Margie Nelson, ages 75 and 76, were traveling west on South 180th Street during Friday rush hour traffic. When the flow of traffic came to a halt due to the Tukwila traffic signals west of the railroad crossings, several vehicles, including the Nelsons', were stopped in the railroads' right of way. The truck in front of the Nelsons' vehicle was stopped on the eastern set of tracks when the truck's driver was alerted by a passenger that a train was approaching. The truck moved forward off the tracks and into safety. Unfortunately, as the truck pulled forward, so did the Nelsons' vehicle. After the Nelsons' vehicle pulled forward, the railroad light and bell signals activated and an automatic gate came down behind the Nelsons' vehicle, indicating a train was approaching within 20 seconds. The Nelsons tried to move forward and off the tracks, striking

the truck in front of them. The truck, however, was already touching the vehicle in front of it and could not move any farther forward. The train struck the Nelsons' vehicle, instantly killing Margie in the passenger seat. Glenn, who was in the driver's seat, died later at the hospital.

¶4 In her second amended complaint, Owen makes several allegations of negligence by the city of Tukwila, ranging from failing to maintain South 180th Street in a safe condition, to failing to provide adequate warning of the dangers posed by the railroad crossings, to failing to adjust traffic control devices to prevent the dangers posed by the railroad crossings.

## PROCEDURAL HISTORY

¶5 Tukwila presented two arguments in support of its motion for summary judgment. Tukwila's main argument was that the claims against it should be dismissed because the decedents' "own conduct removes the [decedents] from the class of persons to whom the city owes a duty." Clerk's Papers (CP) at 835; *see also* CP at 143 ("[S]ummary judgment should be granted because [decedents'] failure to exercise ordinary care for their own safety removes them from any duty owed by the City."). Additionally, Tukwila argued that it was not liable for damages arising from the accident because it had complied with all statutes, ordinances, and the *Manual on Uniform Traffic Control Devices* (2d ed. 1988) (MUTCD).

¶6 The trial court granted Tukwila's motion for summary judgment and issued an order dismissing all of the plaintiffs' claims against Tukwila. In summarizing its reasoning, the trial court stated: "I'm simply not persuaded that a reasonable jury could find under the facts and circumstances here . . . that there was any negligence by the City of Tukwila." CP at 403-04.

¶7 The Court of Appeals quickly and appropriately disposed of Tukwila's primary argument that it did not owe any duty to the Nelsons. *Owen v. Burlington N. Santa Fe*

*R.R.*, 114 Wn. App. 227, 232-33, 56 P.3d 1006 (2002). After noting that a municipality's duty to maintain its roadways reasonably safe for ordinary travel is owed to all persons, whether fault-free or negligent, *id.* (quoting *Keller v. City of Spokane*, 146 Wn.2d 237, 249, 44 P.3d 845 (2002)), the appellate court held evidence of the Nelsons' negligence does not "excuse the City from its duty" and does not "justify the order of dismissal." *Owen*, 114 Wn. App. at 233. The Court of Appeals also reasoned that the MUTCD[1] imposed duties upon Tukwila, *Owen*, 114 Wn. App. at 234-35, and held that Owen had raised an issue of material fact with respect to Tukwila's duty under the MUTCD, reasoning that "a reasonable jury could conclude [based upon the evidence in the record] that unusual circumstances were present at the crossing, requiring more than normal signage and warnings to prevent motorists from being trapped in the path of an approaching train." *Id.* at 238. Accordingly, the order dismissing Owen's claims against Tukwila was reversed. *Id.* at 242.

¶8 The Court of Appeals did not reach whether, as a matter of law, the roadway was inherently dangerous or misleading. *Id.* at 240. Nor did the Court of Appeals reach proximate cause. *Id.* The appellate court below declined to reach these issues because Tukwila did not raise the former issue in its motion for summary judgment and abandoned the latter issue on appeal. *Id.* at 240-41. We granted the city's petition for review.

## ANALYSIS

¶9 First, we emphasize that the question before us is whether Owen has produced sufficient evidence of the city's negligence, and not any question of the potential comparative fault of the Nelsons. It is well established that Tukwila owes a duty to all travelers, whether negligent or fault-free, to maintain its roadways in a condition safe for

---

[1] The Washington Department of Transportation has adopted the MUTCD. WAC 468-95-010.

ordinary travel. *See Keller*, 146 Wn.2d at 249. Owen alleges a breach of that duty and a resulting injury. Any negligence on the part of the decedents is irrelevant to whether a material question of fact regarding the alleged breach of Tukwila's duty survives summary judgment. That is not to say that any negligence on the part of the decedents is irrelevant to the cause of action and may be raised by the city when appropriate. *See* RCW 4.22.005.

■ ¶10 We also emphasize our standard of review. We review summary judgment orders de novo and perform the same inquiry as the trial court. *Hisle v. Todd Pac. Shipyards Corp.*, 151 Wn.2d 853, 860, 93 P.3d 108 (2004). We examine the pleadings, affidavits, and depositions before the trial court and "take the position of the trial court and assume facts [and reasonable inferences] most favorable to the nonmoving party." *Ruff v. King County*, 125 Wn.2d 697, 703, 887 P.2d 886 (1995) (citing *Hartley v. State*, 103 Wn.2d 768, 774, 698 P.2d 77 (1985)). Owen is the nonmoving party. Thus, all facts and reasonable inferences must be viewed in the light most favorable to her. *See id.* Summary judgment is proper if the record before the trial court establishes "that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." CR 56(c).

■■ ¶11 We first examine the duty, if any, of the city. Today, governmental entities are held to the same negligence standards as private individuals. *See Keller*, 146 Wn.2d at 242-43. Liability for negligence does not require a direct statutory violation, though a statute, regulation, or other positive enactment may help define the scope of a duty or the standard of care. *Cf. Bauman v. Crawford,* 104 Wn.2d 241, 244-45, 704 P.2d 1181 (1985). The MUTCD provides at least some evidence of the appropriate duty. *See* RCW 47.36.030; WAC 468-95-010; *see also Kitt v. Yakima County*, 93 Wn.2d 670, 611 P.2d 1234 (1980).

■ ¶12 Tukwila acknowledges that it has a duty to provide reasonably safe roads and this duty includes the duty to safeguard against an inherently dangerous or

misleading condition. A city's duty to eliminate an inherently dangerous or misleading condition is part of the overarching duty to provide reasonably safe roads for the people of this state to drive upon. *See Keller*, 146 Wn.2d at 249. The inherently dangerous formulation recognizes that "[a]s the danger becomes greater, the actor is required to exercise caution commensurate with it." *Ulve v. City of Raymond*, 51 Wn.2d 241, 246, 317 P.2d 908 (1957). Simply stated, the existence of an unusual hazard may require a city to exercise greater care than would be sufficient in other settings. *Id.* at 246, 251-52. *See also Bartlett v. N. Pac. R.R.*, 74 Wn.2d 881, 882-83, 447 P.2d 735 (1968).

¶13 Whether the roadway was reasonably safe for ordinary travel is, in this case, a material question of fact. Questions of fact may be determined as a matter of law "when reasonable minds could reach but one conclusion." *Hartley*, 103 Wn.2d at 775. If reasonable minds can differ, the question of fact is one for the trier of fact, and summary judgment is not appropriate. We have noted before that "issues of negligence and proximate cause are generally not susceptible to summary judgment." *Ruff*, 125 Wn.2d at 703 (citing *LaPlante v. State*, 85 Wn.2d 154, 159, 531 P.2d 299 (1975)); *accord Gilbert H. Moen Co. v. Island Steel Erectors, Inc.*, 128 Wn.2d 745, 759, 912 P.2d 472 (1996) (noting negligence is ordinarily a question of fact).

¶14 Similarly, whether a condition is inherently dangerous or misleading is generally a question of fact. *See Leber v. King County*, 69 Wash. 134, 124 P. 397 (1912); *Provins v. Bevis*, 70 Wn.2d 131, 422 P.2d 505 (1967); *Tanguma v. Yakima County*, 18 Wn. App. 555, 563, 569 P.2d 1225 (1977); *cf. Hewitt v. Spokane, Portland & Seattle R.R.*, 66 Wn.2d 285, 291-92, 402 P.2d 334 (1965) (noting unusual circumstances at railroad crossing may allow trier of fact to find crossing "exceptionally dangerous" and "extrahazardous"). Likewise, the adequacy of the government's attempt to take corrective action is generally a question of fact. *E.g., Livingston v. City of Everett,* 50 Wn. App. 655, 658, 751 P.2d 1199 (1988).

¶15 We turn now to whether there are any genuine issues as to any material facts. A material fact is one that affects the outcome of the litigation. *Hisle*, 151 Wn.2d at 861 (quoting *Barrie v. Hosts of Am., Inc.*, 94 Wn.2d 640, 642, 618 P.2d 96 (1980)).[2]

¶16 According to Owen's expert and the Tukwila public works director there is a high volume of both vehicle and train traffic at the crossing.[3] The train traffic includes high-speed trains. There are three sets of active railroad tracks and two sets of crossing signals together in close proximity. There are nearby traffic signals which, according to lay witnesses and Owen's expert, frequently cause queuing of vehicles over the tracks. Additionally, there is an incline in the road as westbound travelers approach the crossings that, according to the lay witness and Owen's expert, limits drivers' ability to see the traffic signals or approaching trains.[4]

¶17 If the roadway is inherently dangerous or misleading, then the trier of fact must determine the adequacy of the corrective actions under all of the circumstances. *E.g.*,

---

[2] Tukwila's argument that it does not have unilateral authority to install a traffic preemption device is unpersuasive. The MUTCD, section 8A-1, provides that a railroad and the highway agency with authority over the roadway have "joint responsibility in the traffic control function." CP at 792. Although Tukwila lacks the unilateral authority to install and operate a signal preemption device, any municipality that deems the public safety requires signals or other warning devices at any crossing of a railroad at common grade "*shall file* with the utilities and transportation commission a petition in writing, alleging that the public safety requires the installation of specified signals or other warning devices at such crossing or specified changes in the method and manner of existing crossing warning devices." RCW 81.53.261 (emphasis added). Moreover, the statutory requirement in RCW 47.36.050 for railroad owners and operators to post sawbuck signs at crossings and to comply with other laws regulating railroad crossings does not relieve Tukwila of its duty to maintain roadways reasonably safe for ordinary travel. Nor does our holding that federal preemption prohibits municipalities from imposing speed limits or waiting times on railroads by ordinance discharge Tukwila's duty to maintain its roadway in a condition reasonably safe for ordinary travel. *See City of Seattle v. Burlington N. R.R.*, 145 Wn.2d 661, 674, 41 P.3d 1169 (2002).

[3] This fact is particularly significant because "most methods for 'predicting' motor vehicle-train crashes are dependent upon the number and frequency of trains and motor vehicles that use the intersection" CP at 105 (grade crossing diagnostic project report).

[4] Photographs in the record support this allegation.

*Goodner v. Chi., Milwaukee, St. Paul & Pac. R.R.*, 61 Wn.2d 12, 17-18, 377 P.2d 231 (1962). If the corrective actions are adequate, then the city has satisfied its duty to provide reasonably safe roads. According to evidence presented by Owen, an array of remedial measures existed ranging from installing a stop sign before the crossings,[5] posting additional signage to give warnings at each approach, extending the detection period to give vehicles more than 20 seconds advanced warning of an approaching train, and upgrading signals, to separating the railway and vehicle grades. The absence of any of these available remedial measures in combination with the particular conditions at this crossing, including the volume of vehicle and high-speed train traffic, the presence of traffic signals that cause vehicles to halt on multiple sets of tracks, and the alleged limited visibility of westbound drivers, provides evidence from which a reasonable jury could conclude the roadway was not maintained in a condition reasonably safe for ordinary travel or was inherently dangerous or misleading, requiring warnings or elimination of the particular dangers present.[6]

## CONCLUSION

¶18 Because reasonable minds may differ as to whether the roadway was reasonably safe for ordinary travel, inherently dangerous, or misleading, and whether appropriate corrective action has been taken, questions of material fact exist and summary judgment is inappropriate. We affirm the Court of Appeals and remand for further proceedings consistent with this opinion.

---

[5] Local authorities, such as Tukwila, are authorized "to designate particularly dangerous highway grade crossings of railroads and to erect stop signs at those crossings." RCW 46.61.345.

[6] Given our resolution of the substantive issue, we do not reach whether the trial court erred in failing to grant Owen her motion to compel discovery and denying her CR 56(f) motion for a continuance. If further proceedings on these matters are required on remand, we leave it in the able hands of the trial court.

C. Johnson, Sanders, and Owens, JJ., and Ireland, J. Pro Tem., concur.

¶19 Alexander, C.J. (dissenting) — In my judgment, the trial court's grant of a summary judgment in favor of the city of Tukwila should be affirmed. I reach that conclusion after reviewing the facts in the record and drawing inferences therefrom in the light most favorable to Jean Owen, the nonmoving party. This review has satisfied me that there is no question of material fact on the issue of whether Tukwila breached its duty to maintain the roadway in question in a manner that was reasonably safe for ordinary travel. Because the majority reaches an opposite conclusion, I dissent.

¶20 Although Owen made general allegations regarding what she claims was the negligent design of South 180th Street and the lack of proper signage thereon, the central focus of her argument here revolved around the vague assertion that Tukwila was negligent in not making an effort to obtain installation of a signal preemption device to prevent traffic backups over the railroad tracks where the accident occurred that led to the deaths of Glenn and Margie Nelson. It was on this claim that a majority at Division One of the Court of Appeals determined that there is a material factual question.[7] The problem with that conclusion is that there is no authority or precedent imposing such a duty on the part of a city. Furthermore, the evidence that Owen presented to support her assertion that a signal preemption device would be effective in clearing traffic from the railroad tracks during rush hour was insufficient to withstand a summary judgment dismissing her complaint.

---

[7] At the Court of Appeals, it was the plaintiff's principal contention that Tukwila should have separated the railroad crossing from vehicular traffic by means of an underpass. The majority and dissent at Division One of the Court of Appeals all agreed that this argument was without merit.

¶21 According to the record, a signal preemption device is one that is automatically activated by an approaching train. When activated, it causes traffic lights at intersections in the vicinity of a railroad crossing to turn green. This has the intended effect of allowing traffic to move through the intersections and not become entrapped at a railroad crossing. The device is also designed to give an additional warning of an approaching train in the form of flashing lights at a street intersection that are activated 20 seconds before the train passes through the intersection. The *Manual on Uniform Traffic Control Devices* (2d ed. 1988) (MUTCD), which the majority acknowledges has been adopted by the Washington Department of Transportation, recommends that except under "unusual circumstances," signal preemption devices should only be tied into traffic signals that are within 200 feet of a railroad crossing. Clerk's Papers (CP) at 797. Because a signal preemption device gives only an approximate 20 second warning of an approaching train, the farther a traffic light is from railroad tracks, the less effective a signal preemption device will be.

¶22 This court has held that "bare assertions that a genuine material [factual] issue exists will not defeat a summary judgment motion in the absence of actual evidence." *Trimble v. Wash. State Univ.*, 140 Wn.2d 88, 93, 993 P.2d 259 (2000). In regard to a signal preemption device, Owen relied entirely on the declaration of Dr. John Glennon, a civil engineer who consults on highway safety measures. Dr. Glennon stated that "[t]he subject railroad crossing has a high traffic volume that, because of nearby intersections, commonly queues over the railroad crossing. Because an approaching train does not pre-empt the nearby traffic signals, the probability of having vehicles trapped on the tracks with an approaching train is relatively high." CP at 628. Dr. Glennon further indicated that South 180th Street is an extremely hazardous roadway that makes it an "unusual circumstance," which "may" require the implementation of a signal preemption device. *Id.* at 360. He did not, however, indicate that Tukwila should have preempted any particular traffic light.

¶23 Even viewing Dr. Glennon's declaration in the light most favorable to Owen, it cannot be said that the declaration raises a factual question about Tukwila's failure to maintain its roadway in a safe condition or its duty to obtain installation of a signal preemption device at the South 180th Street intersection. The signal preemption device that Dr. Glennon referred to would control a traffic light that is located approximately 660 feet west of where the set of Union Pacific tracks cross South 180th Street. *Id.* at 557; *see also id.* at 786. Dr. Glennon's mere speculation that Tukwila may have had an obligation to obtain installation of a signal preemption device at the road/track intersection pertinent to this case, which would be tied to a traffic signal marker located three times beyond the distance recommended by the MUTCD, does not establish a breach of duty by Tukwila.[8]

¶24 It is also significant that Tukwila lacked the authority to install a signal preemption device, even assuming that the railroad crossing in question presented an "unusual circumstance." In that regard, it is clear that the obligation, if any, to install and operate a signal preemption device rests with the railroad company. It is not the municipality's responsibility. *See, e.g.,* RCW 47.36.050 (railroad company responsible for erecting and maintaining traffic devices in its right-of-way); *City of Seattle v. Burlington N. R.R.,* 145 Wn.2d 661, 674, 41 P.3d 1169 (2002) ("The City's ordinance that reserves to it the authority to control railroad activities that interfere with city traffic is subject to preemption under the [Interstate Commerce Commission Termination Act of 1995] and the [Federal Rail Safety Act of 1970].").

---

[8] The dissenting judge at the Court of Appeals noted that "in James R. Loumiet & William G. Jungbauer, *Train Accident Reconstruction and FELA and Railroad Litigation* 186-87 (3d ed. 1998), [Dr. John] Glennon discusses signal preemption, and advocates preemption in situations where there is an actively controlled crossing within 75 feet of a signal. He does not suggest preemption at distances greater than those in the *Manual on Uniform Traffic Control Devices* (2d ed. 1988) (MUTCD). LOUMIET & JUNGBAUER, *supra,* at 168." *Owen v. Burlington N. Santa Fe R.R.,* 114 Wn. App. 227, 242 n.30, 56 P.3d 1006 (2002) (Baker, J., dissenting).

¶25 While conceding that Tukwila did not have unilateral authority to install a signal preemption device at the road/track intersection, the majority dismisses the point. It relies on the provisions of RCW 81.53.261 for the proposition that Tukwila should have, at the very least, filed a written petition with the Washington Utilities and Transportation Commission, alleging that better warning devices were required for public safety at this crossing. Majority at 789 n.2. In my view, that conclusion is a stretch. A party should bear liability only for the breach of a duty it could fulfill. That party should not have liability for failing to convince another party to fulfill its duty. *See* RCW 81.53.261 (the Washington Utilities and Transportation Commission may order a railroad company to implement additional traffic control devices).

¶26 In sum, there is nothing in the record to show that Tukwila breached its duty to maintain its roadway in a reasonably safe manner for ordinary travel. Tukwila posted the signs and signals it was required to post and then some.[9] While there is undoubtedly a potential of danger present at any railroad crossing, the record shows that a myriad of signs and devices regulated this crossing. Drivers approaching the Burlington Northern Santa Fe Railroad Company and Union Pacific railroad tracks from the west, the direction from which the Nelsons came, encounter several warnings including, in order: a large white "X" and "RR" on the pavement; a yellow sign containing a black "X" and the letters "RR"; a white crossbuck sign announcing "RAILROAD CROSSING"; a sign attached to the sign mast that states "2 TRACKS"; and a sign that commands "DO NOT STOP ON THE TRACKS." CP at 555, 556. In addition, the railroad crossing has flashing light signals and gates, which are automatically activated by approaching trains. When the crossing gates come down, they prevent automobile traffic from proceeding onto the railroad tracks.

---

[9] It is notable that the railroad crossing at which the accident occurred is barely within the corporate limits of Tukwila. The westerly approach to the tracks is within the city of Renton.

¶27 With the benefit of hindsight, one can always argue that more could have been done to prevent a tragic accident like the one that took the lives of Mr. and Mrs. Nelson. The question, though, is not could the city have done more. The question is: did it breach a duty? In my view it did not, and I would, therefore, reverse the Court of Appeals and affirm the summary judgment the trial court granted to Tukwila.

¶28 I, therefore, respectfully dissent.

MADSEN, BRIDGE, and FAIRHURST, JJ., concur with ALEXANDER, C.J.

Reconsideration denied July 22, 2005.