# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

MAUREEN KELLY, an individual,

Appellant,

v.

DAVE DEMULLING and GRETCHEN DEMULLING, husband and wife and the marital community composed thereof,

Respondents.

DIVISION ONE

No. 86009-7-I

UNPUBLISHED OPINION

DWYER, J. — Maureen Kelly appeals from the order of the superior court granting the motion for summary judgment brought by Dave and Gretchen DeMulling and dismissing Kelley's negligence claim against them. On appeal, Kelly asserts that the superior court erred in so ruling because a genuine issue of material fact remains for trial as to whether the DeMullings breached their duty of care as landlords by failing to keep the premises reasonably safe or warn her of the danger posed by a boulder located in a landscaped area of the property on which she tripped and sustained injuries. Because the boulder did not pose an unreasonable risk of harm in its location within the decorative planting strip, the DeMullings did not breach their duty to warn Kelly of the hazard. Thus, we affirm the order of the superior court.

I

The DeMullings own real property containing a single-family residence in which they both reside and a studio apartment that they rent to tenants. Kelly

resided in the apartment on two separate occasions, for a period of three or four years between approximately 2007 and 2010, and, most recently, for a period of nearly five years, from May 2014 until January 2019.[1]

The access to the DeMullings' residence and Kelly's apartment was by a driveway. From as early as 2011, there was a decorative planting area parallel to that driveway within which were located several boulders placed in a line. The first boulder—the alleged hazard in question—was located at the end of the planting strip, adjacent to the entryway to the driveway, and protruded slightly beyond the fence line that ran perpendicular to the driveway and planting strip. The first boulder had been in that location since at least July 2018. The following photo illustrates the positions of the driveway, decorative planting strip with the boulders, and the beginning of the fence line of the property.



During the course of Kelly's tenancy, the DeMullings parked their vehicle in the driveway and instructed Kelly to park her vehicle at an angle on the

---

[1] In her deposition Kelly stated that she first moved into the apartment in either 2007 or 2008 and moved out after three or four years.

shoulder of the road along the fence line that runs perpendicular to the driveway. In order to travel between her vehicle and the apartment, Kelly walked up and down the driveway, often multiple times each day. Kelly was "generally aware of the boulder outcropping." She estimated that, between May 2014 and December 2018, she walked past the boulders nearly 2,400 times.

On a midafternoon in December 2018, Kelly and her husband, Adrian, returned to the property from a nearby park with both their dog and the DeMullings' dog. The day was cold, dry, and bright outside. Kelly parked her vehicle diagonally in the designated parking area in front of the house. She exited the vehicle and walked behind it to the rear door on the passenger side to retrieve the DeMullings' dog. With the dog on a leash, Kelly began walking toward the driveway. She described her path as follows:

> I walked not directly towards the fence line. I walked towards the driveway a few feet out. And because – Adrian was behind me, and we were just kind of walking towards the driveway, more like in a curve. Not like hugging the fence, is what I'm saying. Just walking towards the driveway.
>
> And then when I turned to go up, there's a gravel area at the end of the driveway.

As she walked toward the driveway, Kelly caught the side of her left foot on the first boulder in the planting strip, fell toward the ground, and, in the course of falling, hit her head on either the second or third boulder in the planting strip. She sustained injuries related to the fall.

Kelly filed a lawsuit against the DeMullings alleging that they were negligent in that they breached their duty to use reasonable care to keep and

maintain the common areas of the premises in a reasonably safe condition, they failed to take reasonable precautions to protect her from foreseeable harm, and they failed to warn her of the hazard.

Thereafter, the DeMullings filed a motion for summary judgment arguing that dismissal was appropriate because Kelly was "solely to blame for her own injuries when she fell over large, obvious landscaping boulders in a planting strip."[2]

Kelly opposed the motion and, in so doing, presented a report from a human factors engineer[3] who concluded that the boulder was placed in an area where it was foreseeable that pedestrians would be walking and that the design and conditions of the general area created a foreseeable tripping hazard for a pedestrian walking in the area. The expert noted the configuration of the area where Kelly parked her vehicle and explained that

> after parking a vehicle in this location, it would be natural to walk along the fence line so as to access the driveway of the residence. In other words, it was certainly foreseeable that pedestrians would be walking along the fence line so as to access the driveway, making this a foreseeable pedestrian pathway. Also notice that there are generally no boulders or raised obstructions along the fence line; hence, as a pedestrian is walking in this area there wouldn't be a need to be abnormally vigilant in searching the ground for hazards.

---

[2] The DeMullings filed a motion for summary judgment in December 2022. Kelly responded to the motion. The DeMullings noted a hearing on the motion for March 2023, but the record does not indicate any further action on the motion. In July 2023, the DeMullings again moved for summary judgment resulting in entry of the order that is the subject of this appeal.

[3] As described by the engineer in this case, "the approach of Human Factors Engineering is to compliment the traditional engineering design process by including within that process consideration of the human component, including its foreseeable failure modes, within the system." She further explained, that opinions related to human factors are developed though a human factors engineering analysis which "to determine the underlying root cause(s) of a personal injury incident considers the system as a whole including, the environment, the user, and the task/user behavior, relative to the scope of the requested analysis."

Based on an analysis of the area in question, the engineer opined that

> it is foreseeable that a pedestrian walking along the fence line
> would not reliably detect the protruding boulder, which was partially
> occluded and which would blend in with the gray driveway behind it.
> In other words, the overall conditions that existed created a
> hazardous condition for pedestrians that would not be reliably
> detect[ed] by pedestrians walking in the general area.

The trial court held a hearing, heard argument on the parties' briefing, and granted summary judgment in favor of the DeMullings. According to the court, "on this record there is nothing that would suggest that the landlord should have anticipated the harm from this tenant walking or anybody else walking past this rock." The trial court further explained that "there is no issue -- genuine issue of material fact. There is no duty under these circumstances that the landlord had to paint or position or do anything else about the boulder." The trial court subsequently entered a judgment for $452.49 in statutory fees and costs in favor of the DeMullings and dismissed Kelly's claim with prejudice.

Kelly appeals.

II

Kelly asserts that the trial court erred by granting the order on summary judgment and dismissing her claim for negligence. This is so, she avers, because the danger posed by the boulders was foreseeable and, therefore, the DeMullings had a duty to protect her from the hazard and failed to do so, thereby breaching their duty of care to her. The DeMullings respond that they did not breach their duty of care to her because boulders were neither dangerous nor posed an unreasonable risk of harm. We agree with the DeMullings that the

5

boulders, located in a decorate planting area rather than a walkway, were not a dangerous condition of the land that would result in a breach of the duty owed to Kelly as their invitee.

A

An appellate court reviews the grant of summary judgment de novo, undertaking the same inquiry as the trial court. Jones v. Allstate Ins. Co., 146 Wn.2d 291, 300, 45 P.3d 1068 (2002). Summary judgment is appropriate only if, viewing the facts in the light most favorable to the nonmoving party, there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. CR 56(c); Scrivener v. Clark Coll., 181 Wn.2d 439, 444, 334 P.3d 541 (2014).

"A material fact is one that affects the outcome of the litigation." Owen v. Burlington N. & Santa Fe R.R. Co., 153 Wn.2d 780, 789, 108 P.3d 1220 (2005). Questions of fact may be determined as a matter of law when reasonable minds could reach only one conclusion. Owen, 153 Wn.2d at 788. Thus, "[i]f reasonable minds can differ, the question of fact is one for the trier of fact, and summary judgment is not appropriate." Owen, 153 Wn.2d at 788. However, if "the plaintiff 'fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial,' then the trial court should grant the motion." Young v. Key Pharms., Inc., 112 Wn.2d 216, 225, 770 P.2d 182 (1989) (quoting Celotex Corp. v. Catrett, 477 U.S. 317, 322, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986)).

To establish negligence, a plaintiff must prove (1) the existence of a duty, (2) breach of that duty, (3) resulting injury, and (4) proximate cause. Degel v. Majestic Mobile Manor, Inc., 129 Wn.2d 43, 48, 914 P.2d 728 (1996). Whether the defendant owed a duty to the plaintiff is generally a question of law. Hutchins v. 1001 Fourth Ave. Assocs., 116 Wn.2d 217, 220, 802 P.2d 1360 (1991). In premises liability actions, the possessor's duty of care depends on the entrant's common law status as an invitee, licensee, or trespasser. Tincani v. Inland Empire Zoological Soc'y, 124 Wn.2d 121, 128, 875 P.2d 621 (1994).

The parties do not dispute that Kelly, as a residential tenant, was an invitee at the time in question. Mucsi v. Graoch Assocs. Ltd. P'ship No. 12, 144 Wn.2d 847, 855, 31 P.3d 684 (2001). "In the context of landlords and tenants, this means that a landlord has an affirmative obligation to maintain the common areas of the premises in a reasonably safe condition for the tenants' use." Degel, 129 Wn.2d at 49. The Restatement (Second) of Torts § 343 (1965) defines the duty owed to invitees as follows:

> A possessor of land is subject to liability for physical harm caused to his invitees by a condition on the land if, but only if, [the possessor]
> (a) knows or by the exercise of reasonable care would discover the condition, and should realize that it involves an unreasonable risk of harm to such invitees, and
> (b) should expect that they will not discover or realize the danger, or will fail to protect themselves against it, and
> (c) fails to exercise reasonable care to protect them against the danger.

See Tincani, 124 Wn.2d at 138; Degel, 129 Wn.2d at 49. When the danger to an invitee is known or obvious, the landowner's liability is limited by the Restatement

(Second) of Torts § 343A(1), which provides "[a] possessor of land is not liable to his invitees for physical harm caused to them by any activity or condition on the land whose danger is known or obvious to them, unless the possessor should anticipate the harm despite such knowledge or obviousness." See Tincani, 124 Wn.2d at 139.

Where a plaintiff alleges negligence based on a breach of the duty owed to invitees, proof of a dangerous condition is necessary. Johnson v. Liquor and Cannabis Bd., 197 Wn.2d 605, 619, 486 P.3d 125 (2021). "At common law, a 'dangerous' condition is one 'that poses an unreasonable risk of harm.'" Schwartz v. King County, 200 Wn.2d 231, 240, 516 P.3d 360 (2022) (quoting Gaeta v. Seattle City Light, 54 Wn. App. 603, 609, 774 P.2d 1255 (1989)). Whether a condition poses an unreasonable risk of harm is generally a question of fact, Oliver v. Cook, 194 Wn. App. 532, 544, 377 P.3d 265 (2016), which we may determine as a matter of law if reasonable minds could reach but one conclusion. Owen, 153 Wn.2d at 788.

B

Here, Kelly asserts that a genuine issue of material fact remains for trial as to whether the boulders were a dangerous condition that imposed on the DeMullings the duties outlined in Restatement (Second) of Torts §§ 343 and 343A(1).

As set forth above, a necessary predicate to a premises liability claim is proof of a dangerous condition on the premises. Johnson, 197 Wn.2d at 619. Accordingly, to survive summary judgment Kelly was required to establish the

existence of a dangerous condition, in this case, that the boulders posed an unreasonable risk of harm. Because no genuine issue of material fact remains for trial as to whether the boulders posed an unreasonable risk of harm, Kelly's assertion fails.

As an initial matter, Kelly's evidence fails to demonstrate that the boulders pose an unreasonable risk of harm. The boulders at issue were located in a decorative planting strip which was clearly decorative rather than an active walkway. Moreover, the planting strip ran parallel to the driveway which was the walkway onto the property. As such, the boulders were not located in an area on which Kelly was required to walk to access either her apartment or her vehicle.

Furthermore, the report provided by the human factors expert does not establish an issue of material fact as to the dangerous nature of the boulders. The report indicated that the "overall conditions that existed created a hazardous condition for pedestrians that would not be reliably detect[ed] by pedestrians walking in the general area." This was so, according to that expert, because the boulders presented a danger to pedestrians "walking *along* the fence line." (Emphasis added.) Indeed, based on the photographs, pedestrians would encounter the boulder in question only if they were walking directly beside or "hugging" the fence.

As Kelly admitted during her deposition, however, this was not the route that she had walked on the day of the incident. Rather, she described that she had walked toward the driveway in a curve, rather than "hugging the fence." The expert's report, for its part, did not set forth an opinion that the boulders would

9

present an unreasonable risk of harm to a pedestrian walking in the manner described by Kelly. Given that, the expert's report does not establish a genuine issue of material fact in that regard.

Thus, we conclude as a matter of law that the boulder in this case, located outside in a designated landscaping area where nobody need tread, is not a dangerous condition. Accordingly, Kelly cannot establish that the DeMullings breached their duty to warn her of a dangerous condition, and therefore, cannot establish an element essential to her negligence action.

The trial court properly granted the DeMullings' motion for summary judgment and dismissed the claim.

Affirmed.

Dwyer, J.

I CONCUR:

Brennan, J.

<u>Kelly v. DeMulling, No. 86009-7-I</u>

FELDMAN, J. (CONCURRING) — While I agree with the reasoning and holding of the majority opinion, I write separately to address two points regarding the proper explication of applicable legal principles.

First, consistent with Washington precedent, the majority states that a negligence claim has four elements: duty, breach, proximate cause, and resulting injury. I believe a more precise formulation would identify five elements: duty, breach, cause in fact (also referred to as factual causation), legal causation (also referred to as proximate cause or scope of liability), and harm (also referred to as injury or damages). As explained in my concurring opinion in *Zorchenko v. City of Federal Way*, 31 Wn. App. 2d 390, 401-04, 549 P.3d 743 (2024), such a formulation is more consistent with general tort principles and would eliminate a recognized source of confusion in Washington judicial opinions and jury instructions addressing causation issues.

Second, also consistent with Washington precedent, the majority applies the traditional common law approach to landowner liability in determining the applicable duty of care based on Kelly's status as a "business invitee" on the DeMullings's property. Many other states have abandoned this approach, which requires distinguishing between invitees (those who enter for the purpose of business dealings with the landowner) and licensees (those who merely enter and remain on land with the landowner's consent, such as social guests), and have instead adopted a single duty of reasonable care in all cases involving such lawful land entrants. *See generally Demag v. Better Power Equipment, Inc.*, 197 Vt. 176,

102 A.3d 1101 (2014) (noting that "a slight majority of state courts have now abolished the distinction between licensees and invitees"). In *Demag*, one of the more recent cases addressing this issue, the Vermont Supreme Court noted that the invitee-licensee distinction "is firmly rooted in landowner privilege," is arbitrary, rigid, and confusing, is "contrary to our modern social mores and humanitarian values," and ultimately fails to recognize that a "visitor's safety does not become less worthy of protection by the law because [they are] a social guest and not a business invitee." *Id.* at 182, 184 (internal quotation marks omitted).

Our Supreme Court has not squarely considered this issue since 1986, when it reaffirmed that "[c]ommon law classifications continue to determine the duty owed by an owner or occupier of land in Washington." *Younce v. Ferguson*, 106 Wn.2d 658, 666, 724 P.2d 991 (1986). Relevant here, the court noted in *Younce* that "the majority of jurisdictions" had not rejected the classifications and that it was "not ready to abandon them for a standard with no contours." *Id.* at 665-66. Because a slight majority of state courts have now abolished the distinction between licensees and invitees, the former point is no longer true and there is now a substantial body of law in other jurisdictions to draw upon. See *Demag*, 197 Vt. at 182 (citing Restatement (Third) of Torts: Liability for Physical and Emotional Harm § 51, Reporter's Note, cmt. a, tbl. (Am. L. Inst. 2012) (listing state practices and citing cases for each state)). Additionally, courts that have abandoned the common law classification have adopted the generally applicable duty of ordinary care, which in Washington is set forth in our pattern jury instructions regarding negligence. *See* WPI Chapter 10. As such, the alternative test is now well-defined.

2

Lastly, while the trial court below did not apply the generally applicable duty of ordinary care, the difference between the applicable legal standards may be outcome-determinative here. Our pattern jury instructions define negligence as "the failure to exercise ordinary care. It is the doing of some act that a reasonably careful person would not do under the same or similar circumstances or the failure to do some act that a reasonably careful person would have done under the same or similar circumstances." WPI 10.01 Negligence—Adult—Definition, 6 WASHINGTON PRACTICE: WASHINGTON PATTERN JURY INSTRUCTIONS: CIVIL 10.01 at 126 (7th ed. 2019). Here, for example, Kelly could potentially argue that a reasonably careful person in the same or similar circumstances would take precautions (such as removing the first boulder and perhaps replacing it with a smaller boulder that does not protrude beyond the fence line) to protect property entrants from tripping over the alleged "boulder outcropping." Whether to adopt such a test in place of the traditional common law duties owed by an owner or occupier of land is an issue that should be determined by our Supreme Court.

With these observations, I respectfully concur.

Feldman, J.

3