[No. 61367-2.    En Banc.    January 19, 1995.]

RITA S. RUFF, ET AL, *Respondents*, v. THE COUNTY OF KING, ET AL, *Petitioners.*

*Norm Maleng, Prosecuting Attorney,* and *C. Craig Parker* and *Jill Higgins Hendrix, Senior Deputies,* for petitioners.

*Kargianis, Osborn, Watkins & Marler, Simeon J. Osborn,* and *Michael T. Watkins,* for respondents.

*Andrew G. Cooley* and *Stewart A. Estes* on behalf of Washington Defense Trial Lawyers, amicus curiae for petitioners.

*Christine O. Gregoire, Attorney General, Jon P. Ferguson, Senior Counsel,* and *Michael A. Nicefaro, Jr., Assistant,* amicus curiae for petitioners.

*Bryan P. Harnetiaux* and *Gary N. Bloom* on behalf of Washington State Trial Lawyers Association, amicus curiae for respondents.

MADSEN, J. — Respondent Jon Jason Ruff (Ruff) was permanently injured, while riding as a passenger in a friend's car, when the car went off the road and rolled upside down. Ruff brought suit against Petitioner King County on grounds of negligence. The trial court granted King County's motion for summary judgment. The Court of Appeals reversed and remanded. Review was granted in this court to determine whether a genuine issue of fact exists as to (1) whether King County breached its duty to Ruff, and, if so (2) whether the condition of the county roadway was the proximate cause of Ruff's injuries.

## FACTS

On May 15, 1988, at 8 p.m., Respondent Ruff, a minor, finished his shift as a dishwasher at the Renton Black Angus restaurant. He borrowed Jason Kennedy's car, a 1976 Chevrolet Monte Carlo, which he drove around for several hours. Ruff noticed that one of the tires on the car was bald, was leaking air, and appeared too small for the rim.

At approximately 11:30 that evening, Ruff returned to the restaurant to meet with Jason Kennedy, Gene Felder, Col-

leen Fleming, and Robert Micek, all teenage co-workers at the restaurant. Ruff, Kennedy, Felder, and Fleming got into Kennedy's car. Ruff and Fleming sat in the back seat of the car while Kennedy drove with Felder sitting next to him. Micek drove his own vehicle. The group made two stops to purchase beer, cigarettes, and gas. There is no evidence in the record that the teenagers consumed any alcohol before the accident. The group then proceeded to "bottle beach" on the Cedar River. Clerk's Papers, at 245. As the two cars headed south on 154th Place S.E. toward the beach, Micek drove ahead of the Kennedy car. It was raining and the cars were traveling at approximately 35 m.p.h.

154th Place S.E. is a 2-lane county road with a double yellow no-passing line in the center of the roadway running from the beginning of 154th Place S.E. to the Jones Road intersection where the road ends. The road has a posted speed limit of 35 m.p.h. Generally, the road runs north to south with several substandard curves which result in the posted speed limit. Along the west side of the road is a stream bed. The shoulder width along the section of the roadway where the accident occurred is between 7 and 8 feet.

As the two cars drove downhill southbound on 154th Place S.E. approaching a gentle left-hand curve, for no apparent reason, Jason Kennedy flashed his headlights and accelerated his car to pass Robert Micek's car, crossing over the double yellow line into the on-coming lane, and continued to drive "straight off the road". Clerk's Papers, at 267. Micek reported that he saw no brake lights as the car left the road. Also, according to Gene Felder, the front seat passenger in Kennedy's car, after Kennedy passed Micek's car Kennedy turned around to look back at Micek and by the time he turned back to face forward the car was 2 feet from the side of the road. The car landed in the stream bed upside down. Ruff suffered a broken neck in the accident and is now an incomplete quadriplegic.

In a separate proceeding Jason Kennedy was tried and convicted of reckless driving, minor in possession, and driving without a license. He was sentenced to 90 days in jail.

Ruff filed an action against King County for negligence in breaching its duty to provide reasonably safe roads and highways. Specifically, Ruff asserted that King County (1) failed to properly design 154th Place S.E. in accordance with acceptable standards; (2) failed to provide sufficient width of usable roadway; and (3) failed to properly maintain the roadway surface and adjoining shoulder.

During the discovery phase of the proceedings, transportation engineers and accident reconstructionalists were deposed. Edward Stevens, Ruff's consulting expert transportation engineer, testified as to the condition of the road. He concluded that the asphalt was in excellent condition. The fog line stripe along the side of the road and double yellow line in the center of the road were both in good condition. Each line appeared to have been recently painted. The center stripe line was for no passing. It had reflective raised pavement markings. The speed limit was 35 m.p.h. and was clearly posted. The curve at the accident site did not have a warning sign since it was not considered "substandard", in which case a warning sign would have been required. Clerk's Papers, at 285-86. Stevens was of the opinion that the signing in the area of the accident site was appropriate for the roadway. The width of the road measured from the center of the double yellow line to the near edge was 10 feet 6 inches. The shoulder of the road measured 5 feet. Stevens concluded that there was nothing out of the ordinary about the width of the road.

Dr. John Bollard, one of Ruff's accident reconstructionalists, testified that a car traveling in the proper lane could accelerate and successfully negotiate the curve of the accident site, on wet pavement, at 60 m.p.h. Dr. Bollard stated that at the time the Kennedy vehicle lost control it was traveling at 50 m.p.h. Jack Winsor, another of Ruff's accident reconstructionalists, reiterated this last point by stating that due to the heavy rain, the bald tire on Kennedy's

car, and the way in which Kennedy's car left the lane of travel, the maximum speed Kennedy reached when his car lost control was 50 m.p.h.

Jack Winsor testified that had a barrier been present, depending upon the positioning of the barrier and the type of barrier used, the car would have been directed away from the barrier, allowing the driver to possibly regain control of the car. Jarvis Michie, King County's accident reconstructionalist, testified that had a modern guardrail been in place at the accident site the car would have been redirected. Neither expert testified that having a guardrail at the accident site would have prevented injury.

King County Road Engineer, Louis Haff, in an affidavit, explained King County's guardrail priority system which began in 1984. The first priority for guardrail installation was devoted to bridge approaches throughout the county. This program was carried out in three stages due to budgetary constraints. Legislative funding from the King County Council was provided for the program. The project was completed in 1989.

In the meantime, in 1986, after additional funding was secured, a full-time staff engineer was hired to inventory all county arterials for the purpose of formulating a prioritization of guardrail installation. On October 19, 1988, some 2 to $2^1/2$ years later, a prioritization list of 563 roads in need of a guardrail was published. The ranking is according to need; 1 being high and 563 being low. 154th Place S.E. is number 376 on the list. As of July 16, 1992, the date Mr. Haff signed the affidavit, King County had completed approximately the first 50 roadways on the list.

The trial court granted King County's motion for summary judgment and denied a partial summary judgment that Ruff was free from negligence. The Court of Appeals reversed the trial court's grant of summary judgment on the issue of legal causation concerning the condition of the roadway and affirmed the denial of Ruff's motion for summary judgment.[1] *Ruff v. King Cy.*, 72 Wn. App. 289, 300, 865 P.2d

---

[1]Ruff does not seek review of this latter decision.

5 (1993). The matter was remanded for further proceedings. *Ruff*, at 300. King County appeals to this court on grounds that (1) it has breached no duty owed to Ruff; (2) its conduct is not the proximate cause of Ruff's injuries; and (3) it is immune from suit because its decision not to install a guardrail at the accident site was discretionary.

## ANALYSIS

King County argues that it is entitled to summary judgment, dismissing it from liability as a matter of law for it did not breach any duty owed to Ruff, nor was its conduct the legal cause of Ruff's injuries.

Ruff insists that King County failed to correct a known hazard. Specifically, Ruff contends that the lateral area where Kennedy's car left the road was inadequate and irregular and a guardrail was needed to compensate for these defects. Ruff argues that summary judgment is not appropriate since these factors raise issues of fact as to King County's negligent maintenance of 154th Place S.E.

This court has stated that a summary judgment motion under CR 56(c) may be granted if the pleadings, affidavits, and depositions before the trial court establish that there is no genuine issue of material fact and that as a matter of law the moving party is entitled to judgment. *Dickinson v. Edwards*, 105 Wn.2d 457, 461, 716 P.2d 814 (1986); *Wilson v. Steinbach*, 98 Wn.2d 434, 437, 656 P.2d 1030 (1982). The reviewing court must take the position of the trial court and assume facts most favorable to the nonmoving party. *Hartley v. State*, 103 Wn.2d 768, 774, 698 P.2d 77 (1985); *Braegelmann v. County of Snohomish*, 53 Wn. App. 381, 383, 766 P.2d 1137, *review denied*, 112 Wn.2d 1020 (1989). A material fact is of such a nature that it affects the outcome of the litigation. *Barrie v. Hosts of Am., Inc.*, 94 Wn.2d 640, 642, 618 P.2d 96 (1980); *Braegelmann*, at 383. The issues of negligence and proximate cause are generally not susceptible to summary judgment. *LaPlante v. State*, 85 Wn.2d 154, 159, 531 P.2d 299 (1975); *see also Ferrin v. Donnellefeld*, 74 Wn.2d 283, 444 P.2d 701 (1968); *Wojcik v. Chrysler Corp.*, 50 Wn. App. 849, 751 P.2d 854 (1988). However,

"when reasonable minds could reach but one conclusion, questions of fact may be determined as a matter of law". *Hartley*, at 775.

In the instant case, the Court of Appeals reversed the grant of summary judgment because it found that a material question of fact existed as to whether a guardrail was necessary to make the roadway safe at this location. We do not agree.

■ Negligence consists of (1) the existence of a duty owed to the complaining party; (2) a breach of that duty; and (3) a resulting injury. *Hansen v. Washington Natural Gas Co.*, 95 Wn.2d 773, 776, 632 P.2d 504 (1981); *LaPlante*, at 159. "For legal responsibility to attach to the negligent conduct, the claimed breach of duty must be the proximate cause of the resulting injury." *LaPlante*, at 159.

■ A county has a duty to maintain its roadways in a reasonably safe condition for ordinary travel by persons using them in a proper manner.[2] *Stewart v. State*, 92 Wn.2d 285, 299, 597 P. 2d 101 (1979); *Provins v. Bevis*, 70 Wn.2d 131, 138, 422 P.2d 505 (1967); *Wojcik*, at 854; *see also* Don F. Vaccaro, Annotation, *Liability of Governmental Entity or Public Officer for Personal Injury or Damages Arising Out of Vehicular Accident Due to Negligent or Defective Design of a Highway*, 45 A.L.R.3d 875 (1972). Accordingly, King County has a duty to maintain 154th Place S.E. in a reasonably safe condition for ordinary travel. The record shows that at the time of the accident the asphalt was in excellent condition. The striping along the roadway was clearly visible. The speed limit was clearly posted. The width of the road, including the shoulder, was normal for this type of roadway and the experts agreed that the signing was appropriate for the roadway. Notwithstanding, Ruff argues that his experts

---

[2]The Washington State Trial Lawyers Association (WSTLA) urges this court, in its amicus curiae brief, to reconsider the "reasonably safe" standard and instead apply the "traditional foreseeable consequences analysis". Br. of Amicus Curiae WSTLA, at 17-19. However, neither Ruff nor King County argued foreseeability; thus, this court need not consider this issue. *Mains Farm Homeowners Ass'n v. Worthington*, 121 Wn.2d 810, 827, 854 P.2d 1072 (1993); *Coburn v. Seda*, 101 Wn.2d 270, 279, 677 P.2d 173 (1984).

establish the need for a guardrail at the accident site, thus creating an issue of fact as to King County's negligence.

We recognize that the duty to maintain a roadway in a reasonably safe condition may require a county to post warning signs or erect barriers if the condition along the roadway makes it inherently dangerous or of such character as to mislead a traveler exercising reasonable care, or where the maintenance of signs or barriers is prescribed by law. *Hansen*, at 778; *Lucas v. Phillips*, 34 Wn.2d 591, 595, 209 P.2d 279 (1949); *Tanguma v. Yakima Cy.*, 18 Wn. App. 555, 558-59, 569 P.2d 1225 (1977); *see also Bartlett v. Northern Pac. Ry.*, 74 Wn.2d 881, 447 P.2d 735 (1968); *Wessels v. Stevens Cy.*, 110 Wash. 196, 188 P. 490 (1920); *Leber v. King Cy.*, 69 Wash. 134, 124 P. 397 (1912). This duty does not, however, require a county to update every road and roadway structure to present-day standards. *Tanguma*, at 560. Nor does the duty require a county to "anticipate and protect against all imaginable acts of negligent drivers" for to do so would make a county an insurer against all such acts. *Stewart*, at 299; *see also Owens v. Seattle*, 49 Wn.2d 187, 191, 299 P.2d 560, 61 A.L.R.2d 417 (1956).

Ruff cites no ordinance or statute requiring the installation of barriers. However, he contends that since the lateral recovery area at the accident site was less than 10 feet wide, the American Association of State Highway and Transportation Officials (AASHTO) standards required installation of a guardrail. AASHTO standards have not, however, been officially adopted by King County.[3] The record shows that King County has promulgated its own standards and neither Ruff nor his experts assert that King County violated those standards. Moreover, King County and AASHTO guidelines do not require that roadways be retrofitted with new design structures.[4]

---

[3]AASHTO guidelines provide that issues involving guardrails must be evaluated on an individual basis and ultimately solved by engineering judgment. Richard S. Kuhlman, *Killer Roads: From Crash to Verdict* 11 (1986).

[4]The record establishes that 154th Place S.E. last underwent major reconstruction in the early 1960's.

Since Ruff does not argue that King County violated its road standards by failing to install a guardrail at 154th Place S.E. and no statute mandates these barriers, whether King County is negligent depends upon whether the roadway was inherently dangerous or deceptive to a prudent driver. As this court said in *Leber*:

> Here we have a road graded and in repair, fifteen feet wide, which is wide enough for all ordinary travel unless it be in the populous centers of the state. We think it will require no argument to make plain the fact that here there was no extraordinary condition or unusual hazard of the road. A similar condition is to be found upon practically every mile of hill road in the state. The same hazard may be encountered a thousand times in every county of the state. Roads must be built and traveled, and to hold that the public cannot open their highways until they are prepared to fence their roads with barriers strong enough to hold a team and wagon when coming in violent contact with them, the condition being the ordinary condition of the country, would be to put a burden upon the public that it could not bear. It would prohibit the building of new roads and tend to the financial ruin of the counties undertaking to maintain the old ones. *The unusual danger noticed by the books is a danger in the highway itself.*

(Italics ours.) *Leber*, at 136-37. Under this standard, King County did not have a duty to install a guardrail at 154th Place S.E.

■ The undisputed evidence establishes that at the time of the accident the surface of 154th Place S.E. was in excellent condition, the markings and signing were appropriate, and the width of the road including the shoulder was standard. None of the experts testified that the roadway was inherently dangerous or deceptive.[5] Moreover, while the experts stated that a guardrail would have redirected the

---

[5]Ruff's consulting expert transportation engineer, Edward Stevens, asserted that the roadway provided clear and positive guidance for a driver. Later, during deposition, he stated that the roadway constituted an unreasonably dangerous condition "[b]ecause all roadways can be hazardous". Clerk's Papers, at 473. He based this conclusion on what he stated as "deficiencies relative to the industry standards". Clerk's Papers, at 473. His testimony offers no further explanation for his inference. Nor is there any evidence in the record to suggest that King County violated any industry standard in its construction or maintenance of 154th Place S.E.

vehicle, no expert opined that a guardrail would have prevented injury. We cannot find negligence based upon speculation or conjecture. *Kristjanson v. Seattle*, 25 Wn. App. 324, 326, 606 P.2d 283 (1980). Consequently, based on the evidence, we conclude that no issue of material fact exists regarding the condition of the roadway. Since there is no duty to make a safe road safer, the trial court correctly granted King County's motion for summary judgment.

In view of the foregoing, we need not reach King County's arguments that it was not the proximate cause of Ruff's injuries nor that its decision regarding placement of guardrails is protected by discretionary governmental immunity.

The Court of Appeals is reversed.

DURHAM, C.J., UTTER, DOLLIVER, SMITH, GUY, and JOHNSON, JJ., and ANDERSEN and BRACHTENBACH, JJ. Pro Tem., concur.