[No. 42864-1-I. Division One. July 19, 1999.]

*In the Matter of the Estate of* SHINAUL M.

PATRICE HAAGEN, *Individually and as Personal Representative, Appellant,* v. THE DEPARTMENT OF SOCIAL AND HEALTH SERVICES, ET AL., *Respondents.*

*Carl A. Taylor Lopez*, for appellant.

*Janice Elizabeth Ellis* and *Susan Marjorie Edison*, for respondents.

KENNEDY, C.J. — A Department of Social and Health Services (DSHS) social worker recommended that Shinaul M., a 12-year-old developmentally disabled child, be placed at a group home for developmentally disabled children while he recovered from dental surgery. Shinaul's guardians placed him at the foster home, where he was put in restraints that caused his death. Shinaul's mother, individually and on behalf of Shinaul's Estate (collectively "the Estate"), filed a complaint for damages against DSHS, contending that its social worker negligently recommended that Shinaul be placed at the foster home. DSHS moved for summary judgment, contending that the Estate failed to estab-

lish legal causation as a matter of law. The trial court granted summary judgment dismissal of the complaint, and the Estate appeals.

 The legal causation analysis depends upon mixed considerations of logic, common sense, justice, policy, and precedent. Where a DSHS caseworker breaches his or her duty to a developmentally disabled child, and the breach of duty is a "but for" cause of the injury, the policy concern for the health, welfare, and safety of the child demands that DSHS not be absolved of liability for resulting foreseeable injuries to that child. Accordingly, the trial court erred by concluding that the Estate could not establish legal causation as a matter of law, and we reverse.

## FACTS

Shinaul M. was born on August 6, 1981, with Cornelia de Lange Syndrome, an affliction that caused him to be developmentally disabled and severely self-abusive. Shinaul's behavior sometimes also "involved screaming or hitting or biting or pulling hair or being destructive" toward others. Clerk's Papers at 423 (17:23-25). Dr. Charles Cowan, one of Shinaul's doctors, described him as "probably the hardest child I have ever taken care of." *Id.* at 422 (13:20-21). Because Shinaul's biological mother, Patrice Haagen, was unable to care for him, licensed foster parents Judy and Bill Sanderson became Shinaul's guardians.

On May 6, 1994, when Shinaul was 12 years old, doctors surgically removed his teeth to stop him from causing severe injury to himself by chewing his face and lips. At the time of Shinaul's discharge from the hospital, Dr. Cowan noted the hospital's difficulty in controlling Shinaul's behavior: "Behavior is the main issue in this patient and he has been increasingly more difficult to control as his morphine has been weaned off." *Id.* at 847; *see also id.* at 428 (explaining that Shinaul had to be restrained and supervised one-on-one). Dr. Cowan also expressed doubt regarding whether Shinaul "can be maintained at home." *Id.* at 847. DSHS social worker Marcia Parsons and her of-

fice decided that Shinaul could not be discharged from the hospital to Judy and Bill Sanderson because it was not safe. Shinaul's doctors suggested three alternative plans for Shinaul, but none were feasible.

According to Judy Sanderson, Parsons recommended that Shinaul be placed at New Directions, a private group home for developmentally disabled children that operated under contract with the State. Judy Sanderson said Parsons told her that New Directions "had special expertise for dealing with children like Shinaul[,]" specifically in behavior modification that would help prepare Shinaul for release. *Id.* at 236. Drs. Cowan and Alan Unis, two of Shinaul's doctors, contend that Parsons also informed them of New Directions' experience and special expertise. Based on Parsons' recommendation, Drs. Cowan and Unis agreed to release Shinaul to New Directions, and Judy Sanderson "reluctantly consented to Shinaul's release to New Directions[.]" *Id.*

On June 5, 1994, Shinaul "died because his movements were restricted by the use of mechanical restraints in his bed at New Directions[.]" Resp't's Br. at 20 (agreeing this was Shinaul's cause of death for the purposes of this summary judgment appeal); *see also* Appellant's Br. at 10 ("It is true that the actions of New Directions personnel directly led to Shinaul's death.").

Parsons later admitted that she did not visit New Directions before she recommended it, but had successfully placed two children there. Parsons formed her opinion of New Directions—that its employees "were skilled in working with extremely developmentally-delayed children"—based on reports from a DSHS group care coordinator and discussions with a New Directions' employee, Margaret Carson. Clerk's Papers at 191 (306:20-23). Parsons also averred that Carson had a Ph.D. in developmental psychology and early childhood. According to Parsons, Carson planned to create a behavioral management plan for Shinaul because she had "considerable experience in working with this population." *Id.* at 457 (290:4-5). .

New Directions' contract with DSHS commenced on October 15, 1993, i.e., approximately seven months before Shinaul arrived. Krista Feaster, a New Directions' case manager, was a certified nursing assistant with a bachelor's degree in speech pathology and a minor in developmental psychology, and Sherry Jackson, a New Directions' employee, was a certified dental assistant who had taken some psychology and first aid classes at a community college.[1] Although Feaster averred that Shinaul's self-abusive behavior differed from the behavior of New Directions' other residents, Judy Sanderson had no criticisms of the care or treatment that New Directions provided to Shinaul before his death. Dr. Unis, however, averred that he never would have discharged Shinaul to New Directions had he known New Directions' actual experience.

Individually and on behalf of Shinaul's Estate, Haagen sued DSHS for damages, contending that it was liable for Parsons' negligent recommendation that Shinaul be placed at New Directions, where he died.[2] DSHS moved for summary judgment, contending solely that Parsons' actions were not the legal cause of Shinaul's death. The trial court granted summary judgment dismissal of the complaint, and the Estate appeals.

## DISCUSSION

■ Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." CR 56(c). "The motion will be granted, after considering the evidence in the light most favorable to the nonmoving party, only if reasonable persons could reach but one

---

[1] The record contains no information on the education or experience of the other New Directions employees.

[2] The Estate also alleged that DSHS violated Shinaul's civil rights. Clerk's Papers at 946. The trial court granted partial summary judgment, dismissing this claim on May 7, 1997, and the Estate did not assign error to this order. *Id.* at 397.

conclusion." *Reynolds v. Hicks*, 134 Wn.2d 491, 495, 951 P.2d 761 (1998). "When reviewing a summary judgment order, an appellate court engages in the same inquiry as the trial court." *Id.*

■■ To establish a tort claim for negligence, the Estate must demonstrate (1) the existence of a duty owed to Shinaul; (2) a breach of that duty; and (3) an injury proximately caused by that breach. *Ruff v. King County*, 125 Wn.2d 697, 704, 887 P.2d 886 (1995). "A cause is 'proximate' only if it is both a cause in fact and a legal cause." *Gall v. McDonald Indus.*, 84 Wn. App. 194, 207, 926 P.2d 934 (1996), *review denied*, 131 Wn.2d 1013 (1997). Factual causation is based on "a physical connection between an act and an injury[.]" *Schooley v. Pinch's Deli Mkt., Inc.*, 134 Wn.2d 468, 478, 951 P.2d 749 (1998). And legal causation "requires a determination of whether liability should attach as a matter of law, given the existence of cause in fact." *Braegelmann v. Snohomish County*, 53 Wn. App. 381, 384, 766 P.2d 1137 (1989). "There may, of course, be more than one proximate cause of an injury, and the concurring negligence of a third party does not necessarily break the causal chain from original negligence to final injury." *Doyle v. Nor-West Pac. Co.*, 23 Wn. App. 1, 6, 594 P.2d 938 (1979) (citations omitted).

In its motion for summary judgment, DSHS disputed only legal causation and did not challenge the Estate's evidence on any other element of negligence. "On review of an order granting or denying a motion for summary judgment the appellate court will consider only evidence and issues called to the attention of the trial court." RAP 9.12. Therefore, for the purposes of this appeal, we must presume that the Estate demonstrated the existence of a duty, a breach of that duty, and factual causation. Indeed, at oral argument for this appeal, DSHS conceded that genuine issues of material fact exist with respect to factual, i.e., "but for" causation. Accordingly, we address only the issue of legal causation.

Legal causation "is grounded in policy determinations as

to how far the consequences of a defendant's acts should extend." *Schooley*, 134 Wn.2d at 478. "The focus in the legal causation analysis is whether, as a matter of policy, the connection between the ultimate result and the act of the defendant is too remote or insubstantial to impose liability." *Id.* at 478-79. This determination depends upon " 'mixed considerations of logic, common sense, justice, policy, and precedent.' " *Id.* at 479 (citation omitted). "Legal causation is, among other things, a concept that permits a court for sound policy reasons to limit liability where duty and foreseeability concepts alone indicate liability can arise." *Id.* at 479.

For example, in *Schooley v. Pinch's Deli Market*, 134 Wn.2d at 482, our Supreme Court found legal causation based on public policy. A commercial vendor illegally sold alcohol to a minor who, in turn, gave the alcohol to another minor who seriously injured herself. The court found legal causation because "preclud[ing] liability would . . . lead to an illogical and insupportable result whereby alcohol vendors would be absolved of liability when they sell alcohol to persons between the ages of 18 and 21." *Id.* at 482. The court relied upon Washington's clear policy to protect minors' health and safety interests against the effects of alcohol stating, "[i]t is illegal to sell minors alcohol and if a vendor breaches this duty it will be responsible for the foreseeable injuries which result." *Id.* at 480.

By contrast, in *Hartley v. State*, 103 Wn.2d 768, 784, 698 P.2d 77 (1985), our Supreme Court refused to find legal causation based on public policy. In that case, the State Department of Licensing failed to revoke a habitual offender's driver's license, notwithstanding the driver's repeated offenses. The offender drove drunk and killed a woman in an automobile collision. The court held that the Department was not liable to the estate of the woman because the alleged cause was "too remote and insubstantial to impose liability[.]" *Id.* at 784. Further, the court reasoned that finding legal causation would open the government to unlimited liability for every decision to delay proceedings. *Id.* at 785.

In *Tyner v. DSHS*, 92 Wn. App. 504, 516, 963 P.2d 215 (1998), *review granted*, 137 Wn.2d 1020 (1999), the court held that a CPS caseworker's negligent investigation can be a legal cause of damage resulting from a court-ordered separation of parent and child in some cases. The court recognized that "[a]t some point, as a matter of policy and common sense, the independent exercise of judicial power breaks the chain of legal causation." *Id.* at 517; *see also Bender v. City of Seattle*, 99 Wn.2d 582, 591-92, 664 P.2d 492 (1983). Therefore, the court held that "[i]t makes little sense to hold that CPS [Child Protective Services] is the cause of a court's decision to separate parent and child *unless the information supplied by CPS to the court is materially misleading or incomplete.*" *Tyner*, 92 Wn. App. at 518 (emphasis added); *see also Babcock v. State*, 116 Wn.2d 596, 606-09, 809 P.2d 143 (1991) (explaining that CPS caseworkers, who control the flow of information, cannot escape liability for negligent investigations).

In the present case, the paramount public policy concern is the health, welfare, and safety of the child. *See* RCW 26.44.010. Here, Parsons recommended that Shinaul be placed at New Directions, but Shinaul's doctors and guardian made the decision to place him there. In other words, Parsons—like the CPS caseworker in *Tyner*—submitted a recommendation, but did not actually make the decision. Following the reasoning in *Tyner*, if Parsons breached her duty to Shinaul by, for example, supplying materially misleading or incomplete information to Judy Sanderson and Shinaul's doctors as they contend that she did, then her recommendation would be a legal cause of Shinaul's death.

Unlike *Hartley*, 103 Wn.2d at 785, where the court was concerned with opening the government to unlimited liability every time the Department of Licensing delays license revocation proceedings, policy, logic and common sense demand that DSHS not be absolved of liability for resulting foreseeable injuries where a DSHS employee breaches its duty to a developmentally disabled child and the breach of duty is a "but for" cause of the injury. Like

*Schooley*, 134 Wn.2d at 482, precluding liability in the present case would lead to an illogical and insupportable result, i.e., DSHS and its caseworkers could breach their duty to children with impunity. DSHS concedes that there is a genuine issue of material fact in dispute regarding whether Parsons gave materially misleading information that caused Shinaul's guardian and doctors to place him at New Directions, where he died as the result of being placed in restraints. If the Estate can establish that Parsons gave materially misleading information that caused Shinaul to be placed at New Directions inappropriately, a rational trier of fact could find "but for" causation and legal causation will lie. Accordingly, the trial court erred by concluding that the Estate could not establish legal causation as a matter of law.

Reversed and remanded for trial or such other disposition as shall be consistent with this opinion.

WEBSTER and APPELWICK, JJ., concur.

Review denied at 140 Wn.2d 1007 (2000).