IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

| | | |
|---|---|---|
| MADELYNN M. TAPKEN, a single person, | ) ) ) | No. 32909-7-III |
| Appellant, | ) ) | |
| v. | ) ) | |
| SPOKANE COUNTY, Public Works/Department of Engineering & Roads, a Municipal Corporation, | ) ) ) ) | UNPUBLISHED OPINION |
| Respondent, | ) ) | |
| CONRAD MALINAK, a single person, et al., | ) ) ) | |
| Appellant. | ) | |

LAWRENCE-BERREY, J. — Madelynn Tapken was a passenger on a motorcycle

driven by Conrad Malinak. She suffered serious injuries and paralysis as a result of

Malinak not perceiving the sharpness of a right turn and crashing his motorcycle.

Tapken brought this personal injury action against Malinak and Spokane County.

Tapken premised the County's liability on its failure to design and maintain a safe

roadway. Malinak asserted a similar cross-claim against the County.[1] At the conclusion of plaintiffs' evidence to the jury, the County moved for judgment as a matter of law on the issues of liability and proximate cause. The trial court granted the County's motion. The trial court determined as a matter of law that the County was not negligent; but even if it was, that its negligence was not the proximate cause of plaintiffs' injuries.

Tapken and Malinak appeal. They assert various errors. We agree with only one of their assertions. We hold that the trial court erred by granting the County's motion for judgment as a matter of law. We therefore reverse and remand for a new trial.

## FACTS

In the summer of 2011, Malinak and Tapken met while working at Red Robin in downtown Spokane. At the time, Malinak had owned his motorcycle for a few months and had previously owned a similar bike. When Tapken learned Malinak had a motorcycle, she told him that she enjoyed taking rides and had frequently ridden with her father and ex-boyfriends. Tapken knew how to ride as a passenger, including that she should match and not resist the operator's leaning of the motorcycle on turns. The two arranged to take a ride together, and the first time out was uneventful.

On their second ride, they left Spokane to drive on the Palouse. The weather was

---

[1] The parties at trial and in their briefs refer to Tapken and Malinak as plaintiffs.

2

sunny and approximately 60 degrees. The two rode to Fairfield and then took Prairie View Road out of town toward Waverly, driving at approximately the speed limit of 45 m.p.h.

Just before Waverly, the road forks into a "Y" intersection, known as the "Waverly Y." It is a triple intersection, in that each of the three intersecting roads splits into two legs as they converge, forming a triangle of unused roadway at the convergence of the intersection. The convergence of these three roads creates a need to regulate the traffic. Spokane County elected to regulate the converging traffic with various signs. Specifically, for a driver coming from the north and driving toward Waverly, there is a yield ahead warning sign 800 feet from the intersection, and two yield signs in the intersection—one for a driver veering right and another for a driver veering left. As a driver passes the yield ahead warning sign (800 feet from the intersection), a driver sees a large hawthorn bush located on the right side of the road several hundred feet toward the intersection. Because of its close proximity to the road and the contour of the road bending to the left near it, the large hawthorn bush obscures both the yield sign for traffic veering right and a portion of the road to the right. This makes it difficult for a driver approaching from the north to gauge the sharpness of both the right and the left turn

---

For ease of reference, we will also.

3

choices until the driver is much closer to the large bush and intersection. There is no sign warning a driver to reduce speed below the posted speed of 45 m.p.h.

As he approached the intersection from the north, Malinak slowed to 35-40 m.p.h., anticipating he would veer to the right.[2] Malinak began to lean right. But almost immediately, he realized that the right turn was sharper than he had earlier perceived. Believing that he was going too fast to veer right, he braked and leaned left, trying to make the more gradual left turn. Tapken did not follow the lean, resulting in the motorcycle running straight through the intersection, traveling in the air for over 50 feet and into a quarry. Tapken was severely injured and permanently paralyzed. She initiated the present action.

At trial, the plaintiffs presented testimony from three County employees about the design and maintenance of the road, followed by testimony from three experts and then testimony from Malinak. Of the experts, Andrew Harbinson testified first as a collision analyst. Although he was unable to reconstruct the accident because there was insufficient physical evidence at the scene, he did state that there was no evidence of excess speed. He testified that the motorcycle travelled approximately 56 feet in the air

---

[2] Because of her head injury, Tapken does not remember the events of the day and did not testify at trial. Since there were no other witnesses, Malinak was the only source of information about the events that transpired.

before landing off the roadway and therefore was traveling between 35 and 43 m.p.h. when it departed from the roadway.

Next, the plaintiffs presented testimony from Dr. Richard Gill, a human-factors engineering consultant. He testified how a reasonable motorist would respond to the intersection. In his opinion, the intersection was misleading and needed to be reconfigured. Primarily he took issue with the triple-"Y" having three points where traffic crosses, one of which has no form of traffic control. He then testified that because there were speed warnings around previous curves, a driver would have expected there to be a speed warning here if the maximum safe speed was less than the speed limit. Finally, he testified that the yield ahead sign was too far from the intersection, and that people were likely to forget about it in the 12 seconds between seeing the yield ahead sign and seeing the yield sign near the intersection.

After this, the plaintiffs presented a videotaped deposition of Transportation Engineer Edward M. Stevens. He testified that a yield sign is an inappropriate sign to control speed and that a driver would not have been able to see the yield sign to the right in time to actually yield. He also calculated that the reasonable safe speed for a right turn there was approximately 20 m.p.h.

At the conclusion of the plaintiffs' evidence, the County orally moved for

judgment as a matter of law, both on liability and on proximate cause. The trial court

looked to the duties imposed on drivers under chapter 46.61 RCW: to slow when

approaching a yield sign, to drive at an appropriate reduced speed when approaching and

crossing an intersection, and to see what would be seen by a person exercising ordinary

care. The trial court then looked at testimony establishing that yield signs are only used at

intersections, and that any reasonable person seeing a yield ahead sign would expect an

intersection and for those duties under chapter 46.61 RCW to apply. Because Malinak

testified that he did not believe a yield sign imposed any obligation to slow down absent

conflicting traffic, the trial court determined as a matter of law that the obscured yield

sign and corner did not contribute to the accident. The court also stated that there was

insufficient evidence that the County violated its duty to exercise ordinary care in the

design and maintenance of its public roads. At best, the evidence allowed the jury to

speculate as to breach and causation. For these reasons, the trial court granted the

County's motion for judgment as a matter of law. Tapken and Malinak appeal.

## ANALYSIS

1. *Standard of review: Evidence must be viewed most favorable to the nonmoving party*

"When reviewing a trial court's decision on a motion for judgment as a matter of

law, the appellate court applies the same standard as the trial court and reviews the grant

6

or denial of the motion de novo." *Alejandre v. Bull*, 159 Wn.2d 674, 681, 153 P.3d 864 (2007). Such a motion must be granted "'when, viewing the evidence most favorable to the nonmoving party, the court can say, as a matter of law, there is no substantial evidence or reasonable inference to sustain a verdict for the nonmoving party.'" *Id.* (quoting *Davis v. Microsoft Corp.*, 149 Wn.2d 521, 531, 70 P.3d 126 (2003)).

2. *Whether the trial court erred when it granted the County's motion for judgment as a matter of law*

To prevail on a claim of negligence against the County, the plaintiffs were required to show a duty owed, breach of that duty, a resulting injury, and that breach proximately caused that injury. *Lowman v. Wilbur*, 178 Wn.2d 165, 169, 309 P.3d 387 (2013) (quoting *Crowe v. Gaston*, 134 Wn.2d 509, 514, 951 P.2d 1118 (1998)). Only breach of duty and proximate cause are issues on appeal.

a. *Breach of duty*

A county owes a duty generally to design and maintain roads in a reasonably safe condition for ordinary travel. *Keller v. City of Spokane*, 146 Wn.2d 237, 246, 44 P.3d 845 (2002). Whether roadway conditions are reasonably safe for ordinary travel, or instead are inherently dangerous or misleading, is usually a question of fact. *Owen v. Burlington N. Santa Fe R.R.*, 153 Wn.2d 780, 788, 108 P.3d 1220 (2005). In *Owen*, a train hit a car blocked by traffic on a railroad crossing, killing its two passengers. *Id.* at 784-85. Jean

Owen, individually and as personal representative of the estates of the deceased persons, brought suit against the railroad and the City of Tukwila. *Id.* at 783. Owen settled with the railroad. *Id.* Subsequently, the city moved for summary judgment, and argued that it complied with all statutes, ordinances, and the manual on uniform traffic control devices. *Id.* at 785. The trial court granted the city's motion. *Id.* In reversing, the *Owen* court noted "'issues of negligence and proximate cause are generally not susceptible to summary judgment.'" *Id.* at 788 (quoting *Ruff v. King County*, 125 Wn.2d 697, 703, 887 P.2d 886 (1995)). Moreover, violation of a statute, regulation, or other positive enactment need not be shown to establish liability, although compliance may help in defining the scope of a duty for providing reasonably safe roads. *Id.* at 787. "A city's duty to eliminate an inherently dangerous or misleading condition is part of the overarching duty to provide reasonably safe roads for the people of this state to drive upon." *Id.* at 788. "[T]he existence of an unusual hazard may require a city to exercise greater care than would be sufficient in other settings." *Id.*

The *Owen* court then reviewed the various conditions present that contributed to the collision. These conditions included high traffic volume, a crown in the roadway, and traffic signals located just beyond the tracks, which combined to cause frequent queuing of vehicles on the tracks. *Id.* at 784, 789. The *Owen* court then reviewed the testimony

8

from Owen's expert, who opined that the conditions were unsafe and described how the conditions could be mitigated. *Id.* at 789-90. The *Owen* court reversed the trial court's order of dismissal, concluding that "reasonable minds may differ as to whether the roadway was reasonably safe for ordinary travel, inherently dangerous, or misleading, and whether appropriate corrective action has been taken." *Id.* at 790.

Here, the presence of the large hawthorn bush that obscured the roadway to the right and one of the two yield signs created a situation that arguably required the County to do more than simply comply with positive regulations. Plaintiffs presented evidence that a driver approaching from the north would be unable to appreciate the sharpness of the road, which veered right, until too late.[3] Plaintiffs also presented evidence that the yield ahead sign, 800 feet from the intersection, would not satisfactorily warn of the degree to which a person might be required to reduce his or her speed to safely veer right. Plaintiffs also presented evidence of how the intersection could be easily made safer. We conclude that plaintiffs presented substantial evidence that the County breached its duty to design and maintain a safe intersection.

---

[3] The County argues that the hazards were open and apparent, and that Malinak knew of the hazards. Viewing the evidence most favorably to the plaintiffs, however, creates issues of fact of how familiar Malinak was with the intersection, how clearly and quickly a reasonable driver should perceive the sharp right curve, and whether Malinak's failure to slow beyond his already reduced speed was reasonable in light of what a

b.     *Proximate cause*

Proximate cause has two elements: cause in fact and legal causation. *Schooley v. Pinch's Deli Market, Inc.*, 134 Wn.2d 468, 474, 951 P.2d 749 (1998). Legal causation involves a legal determination of whether liability should exist. *Petersen v. State*, 100 Wn.2d 421, 435, 671 P.2d 230 (1983). Only the first element, factual causation, is at issue here.

Substantial evidence of factual causation exists if the jury could find that, but for the defendant's actions, the plaintiff would not have been injured. *Schooley*, 134 Wn.2d at 478. "Establishing cause in fact involves a determination of what actually occurred and is generally left to the jury." *Id.* Causation need not be proved to a certainty. *Gardner v. Seymour*, 27 Wn.2d 802, 808, 180 P.2d 564 (1947) (quoting *Home Ins. Co. of New York v. N. Pac. Ry.*, 18 Wn.2d 798, 802, 140 P.2d 507 (1943)). It is sufficient that plaintiff's evidence allows a jury to find that the harm more probably than not happened in such a way that defendant's negligence played a role. *Id.* (quoting *Home Ins.*, 18 Wn.2d at 802). An accident can have more than one proximate cause. *Goucher v. J.R. Simplot Co.*, 104 Wn.2d 662, 676, 709 P.2d 774 (1985).

The trial court determined that plaintiffs failed to establish proximate cause

---

reasonable person should perceive.

because Malinak testified that he only slows for a yield sign if there is converging traffic, and because there was no converging traffic, the yield sign hidden by the hawthorn bush could not have proximately caused Malinak's failure to slow down. The plaintiffs note that the hawthorn bush obscured both the yield sign to the right *and the sharpness of the right hand turn.* They persuasively argue evidence establishes that Malinak would have slowed more had he been able to perceive the sharpness of the right turn earlier. We hold that plaintiffs presented substantial evidence of proximate cause.[4]

3.      *Whether the trial court abused its discretion in excluding evidence of prior accidents at the "Waverly Y"*

During discovery, the plaintiffs developed evidence of over two dozen prior accidents near the "Waverly Y" in less than 20 years—all involving single vehicles leaving the roadway. Plaintiffs contended that the number of prior road-departure

---

[4] The dissent concedes that "the cause of the accident was the failure to slow sufficiently to make the turn." Dissent at 1. It then concludes that the obstruction that prevented Malinak from seeing the sharpness of the curve was not a proximate cause of his failure to slow sufficiently.

One does not need to take judicial notice of the fact that drivers routinely slow to safely navigate a sharp curve when the sharpness of the curve is apparent. A jury is entitled to decide whether Malinak, had the intersection been unobstructed so he could have earlier seen the sharpness of the curve, would have sufficiently slowed or whether he would have launched himself and his passenger off the road. Because our standard of review requires us to assume the facts and inferences in the light most favorable to Malinak, we must presume that he would have done what almost every other driver does when perceiving a sharp curve: slow down sufficiently rather than wreck.

accidents at that location, regardless of the causes or the similarity of those accidents to theirs, was admissible to establish the County should have conducted a road study. Tapken made an offer of proof that the County's own road standards manual required the County to study any location with a history of road departures and mitigate the problem. However, the plaintiffs fail to provide authority or argument that the County's failure to perform a study violates a duty owed to them. We therefore decline to review this issue. *Milligan v. Thompson*, 110 Wn. App. 628, 635, 42 P.3d 418 (2002); RAP 10.3(a)(6).

In addition, the plaintiffs sought admission of historical accidents that were substantially similar to theirs at the "Y" intersection to establish that the County was on notice not only of the conditions near the intersection, but also that those conditions were dangerous. The County argued that evidence of even substantially similar accidents was not admissible because it admitted it had notice of the conditions near the intersection, specifically that the hawthorn bush obscured one of the yield signs.

Prior to trial, the trial court ruled that evidence of three substantially similar accidents would be admissible, but only if the County presented evidence that it lacked notice that the intersection was dangerous. The trial court later modified its ruling and excluded all evidence of prior accidents. The trial court explained:

> [P]rior collisions don't decide whether or not the roadway was unsafe.
> That's for the experts to decide. Both sides have their experts talking about

how safe the condition of the roadway is, which is the ultimate question, and all these accidents don't help the jury understand that at all.

When I went through all the accidents that were presented, some of them were deer, some of them were snow and ice, some were at night, some were off the roadway. There's really no uniformity as to how these accidents occur.

So at this point once and for all I'm going to decide this issue. There won't be any testimony regarding prior accidents. They're not at all relevant to whether or not this was properly designed and maintained, and any such testimony would be prejudicial.

Report of Proceedings (RP) at 866-67.

A trial court's decision to admit or exclude evidence is reviewed for an abuse of discretion. *Salas v. Hi-Tech Erectors*, 168 Wn.2d 664, 668, 230 P.3d 583 (2010). A trial court abuses its discretion when it renders a decision that is "'manifestly unreasonable or based upon untenable grounds or reasons.'" *Id.* at 669 (quoting *State v. Stenson*, 132 Wn.2d 668, 701, 940 P.2d 1239 (1997)). "'A decision is based on untenable grounds or for untenable reasons if the trial court applies the wrong legal standard or relies on unsupported facts.'" *Id.* (quoting *In re Pers. Restraint of Duncan*, 167 Wn.2d 398, 402-03, 219 P.3d 666 (2009)).

Prior to determining whether evidence was properly excluded as irrelevant, we examine the nature of the notice that the plaintiffs must establish. A municipality is deemed to have notice of an unsafe condition created by its employees or agents. *Wright v. City of Kennewick*, 62 Wn.2d 163, 167, 381 P.2d 620 (1963). But to establish liability

for a condition not created by the municipality, the plaintiff must prove that the municipality knew or should have known of the condition before the accident. *Russell v. City of Grandview*, 39 Wn.2d 551, 554-55, 236 P.2d 1061 (1951). The dangerous condition alleged here is the large hawthorn bush and how it obscures the intersection so that a person veering right could not gauge the severity of the turn until too late to slow to a safe speed. This is a condition not created by the County. Therefore, unless admitted by the County, the plaintiffs were required to establish knowledge of the condition.

Prior to trial, the County admitted that it had notice that the large hawthorn bush obscured the intersection, although it disputed that this condition was dangerous. At trial, the County equivocated somewhat. It disputed the degree to which the hawthorn bush actually obscured the yield sign and the intersection, but it certainly did not claim to have lacked notice of the condition.

The trial court correctly concluded that the prior accidents were irrelevant. The relevant notice is notice of the alleged dangerous condition—which the County admitted—not whether the condition actually was dangerous. *See Tanguma v. Yakima County*, 18 Wn. App. 555, 562-63, 569 P.2d 1225 (1977). Under these facts, the County's admission of notice was sufficient.[5] We hold that the trial court did not abuse

---

[5] If the County's evidence at trial leaves the jury with the false impression that

14

its discretion in excluding evidence of prior accidents.

4. *Whether the trial court abused its discretion in excluding certain expert testimony*

Plaintiffs argue that the trial court erred by excluding Mr. Harbinson's testimony concerning causation of the accident. Tapken's counsel asked Mr. Harbinson his opinion of the particular cause of the accident. Mr. Harbinson answered, "I've got three." RP at 781. "The proximate cause of the collision is speed." RP at 781. Defense counsel objected on the grounds that "[i]t's improper for any witness to talk about the proximate cause of an accident," arguing that proximate cause is "beyond the expertise of an expert witness." RP at 781-82. Meanwhile, Tapken's counsel clearly believed that the objection was to the witness testifying to causation generally, pointing to opinions Mr. Harbinson had previously given in his deposition. The trial court ruled using the unreferenced demonstrative pronoun "that," and concluded that "that" was an ultimate issue of fact reserved for the jury. RP at 781-82. While the County believes "that" referenced proximate cause, plaintiffs believe "that" referenced causation in general. This uncertainty was never resolved because following the ruling, Tapken's counsel moved on to a separate line of questioning. However, because the exclusion is premised on the objection, and the objection was to proximate cause—not causation in general—we deem

---

there has never been any similar accidents at the intersection, the trial court may

it unnecessary to review plaintiffs' assigned error.

5.    *Whether the trial court erred in denying Tapken's motion for partial summary judgment*

Tapken argues that the trial court erred in denying her motion for partial summary judgment, which sought to dismiss the County's claim that she was contributorily at fault for her injuries. Tapken's argument is premised on her assertion that there was insufficient time for her to react to Malinak's sudden attempt to turn left instead of right, and if she failed to lean left, or even if she leaned further right, her act was not volitional and therefore not negligent. Alternatively, Tapken argues that the County has no evidence what she did, and therefore its claim that she was contributorily at fault must fail because it is pure speculation.

Decisions on summary judgment are reviewed de novo. *Lakey v. Puget Sound Energy, Inc.*, 176 Wn.2d 909, 922, 296 P.3d 860 (2013). Evidence is reviewed in the light most favorable to the nonmoving party, and summary judgment is appropriate where there is not substantial evidence or a reasonable inference to support a finding of liability. *Dowler v. Clover Park Sch. Dist. No. 400*, 172 Wn.2d 471, 484-85, 258 P.3d 676 (2011).

Preliminarily, the County cites *Johnson v. Rothstein*, 52 Wn. App. 303, 759 P.2d 471 (1988), and argues that this court may not review a denial of summary judgment after

reevaluate the relevance and admissibility of the substantially similar accidents.

a trial on the merits. *Johnson* is inapposite. Here, there has not been a trial on the merits; rather, the trial court granted the County's motion for judgment as a matter of law.

In its substantive response to this issue, the County quotes a portion of Detective David Thornburg's interview with Malinak at the hospital, recorded in his accident report.

> [Malinak] started to lean right to make a right turn and so did [Tapken]. He then decided to go left instead, so he leaned back to the left, but [Tapken] leaned even farther right. [Malihak] stated this made the bike unstable and they ended up going straight off the road.

Clerk's Papers (CP) at 691. The County then takes issue with applying the rule that allows disfavored drivers a reasonable reaction time to this case. The County argues that reasonable care in the context of experienced motorcycle riders and passengers "requires [both] riders to closely mirror the movements of each other so they move in synch." Resp't's Br. at 47.

First, neither we nor the County need speculate on why the motorcycle did not veer left once Malinak leaned left after deciding to veer that direction: Tapken did not match his movement. Moreover, construing the evidence in the light most favorable to the County, the nonmoving party at summary judgment, we must accept the truth of Malinak's statement to the deputy: "[Tapken] leaned even farther right." CP at 691. Again, assuming these facts in the light most favorable to the County, if Tapken had sufficient time to lean farther right, she also may have had sufficient time to lean to the

17

No. 32909-7-III
*Tapken v. Spokane County*

left. Despite Malinak's sudden and unexpected weight shift to the left, it is a genuine issue of material fact what a reasonable motorcycle passenger would have done in Tapken's situation. Just as the reasonableness of the County's conduct must be evaluated by a jury, so must Tapken's and Malinak's. The trial court did not err in denying Tapken's motion for partial summary judgment.

## CONCLUSION

Although we affirm the trial court's other challenged rulings, we reverse the trial court's order granting the County's motion for judgment as a matter of law and remand for trial.

A majority of the panel has determined this opinion will not be printed in the Washington Appellate Reports, but it will be filed for public record pursuant to RCW 2.06.040.

_____
Lawrence-Berrey, J.

I CONCUR:

_____
Fearing, J.

18

32909-7-III

KORSMO, J. (dissenting) — While the majority nicely analyzes the appellants'
theory of the case, it misses the fact that led the trial court to dismiss this action—the
appellants did not prove that the supposedly dangerous interchange caused the accident.
The trial court concluded, and I agree, that the evidence did not support their case. Since
we should be affirming that ruling, I respectfully dissent.

Viewing the evidence in the light most favorable[1] to the appellants, as the trial
court did and as we must do at this juncture, shows that while there was a factual dispute
whether the intersection design was dangerous, the cause of the accident was the failure
to slow sufficiently to make the turn. Mr. Malinak and Ms. Tapken never showed that it
was some feature of the intersection that led to the failure to sufficiently navigate the
turn. If, for instance, the motorcycle had struck another vehicle due to the design, the
appellants would have a case. However, the accident occurred because Mr. Malinak
treated the intersection as if it were a mere curve in the road subject to the posted
highway speed rather than an intersection.[2]

---

[1] Two otherwise salient facts that therefore are not relevant are that (1) Mr.
Malinak had driven this road on several prior occasions and (2) that he realized when
entering the turn that Waverly, his destination, was to the left, not the right.

[2] Particularly telling is this testimony: "Well, what I understand about this
roadway, and I guess any roadway but particularly this roadway, is that any, anytime that
I was supposed to slow down for a curve, I was told to. But, you know, whenever I was
meant to deviate from the posted speed limit, also I was told which direction I would
have to go." Report of Proceedings (RP) at 1015.

In examination by his own attorney, Mr. Malinak agreed that he was driving the posted speed limit and, when shown other types of road signs from this highway such as "curve ahead" or cautionary speed posting, agreed that he would slow down in accordance with the dictates of those signs. RP at 1015-1016. Here, he did not see the "yield ahead" sign. RP at 965. He also believed that a yield sign did not indicate an upcoming intersection and meant slow down only if needed. RP at 1019. Since he did not see any other traffic, he did not slow down when he saw the yield sign on his left. RP at 1117-1118. His misunderstanding of his obligations when approaching an intersection led to this tragic accident.

As the trial judge correctly analyzed, yield signs govern intersections, not curves. RCW 46.61.180; .190. All drivers are required to drive at a speed that is "reasonable and prudent under the conditions." RCW 46.61.400(1). A driver approaching a yield intersection has an obligation to slow and/or stop:

> The driver of a vehicle approaching a yield sign shall in obedience to such sign slow down to a speed reasonable for the existing conditions and if required for safety to stop, shall stop.

RCW 46.61.190(3).

Mr. Malinak did not stop or even slow down for the intersection both because he missed the sign alerting him to the upcoming intersection and he did not know his driving

2

obligation with respect to the yield sign.[3] The county properly signed the intersection by notifying drivers of a yield ahead. The motorcyclist then had the duty to slow sufficiently or stop in order to make a turn. Thus, the county had no liability with respect to the actual cause of the accident—the failure of the motorcycle to slow sufficiently to make a turn at the intersection.

The trial court correctly realized there was no basis, other than speculation, for the county to be held liable. This was not the case of an improperly signed curve in the road. It was the case of a properly signed intersection that was not timely comprehended by the driver. That was the only cause of the accident. The trial court thus correctly dismissed the action after the plaintiff's case.

I respectfully dissent.

Korsmo, J.

---

[3] Even under his own theory that he slowed, albeit insufficiently, to make the unexpectedly sharp right turn, he was in violation of his basic duty to drive slowly enough for the conditions. RCW 46.61.400(3). He blames this failure on the county in a dubious attempt to delegate his own driving responsibility.

3