# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

JEANETTE STOFLETH, an
individual,

          Appellant,

          v.

KRISTINA COSGRAVE and "JAMIE
DOE," and the marital community
compromised thereof; 733
LAKESIDE CONDOMINIUM
ASSOCIATION, a non-profit
corporation,

          Respondents.

)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)

No. 83183-6-I

DIVISION ONE

UNPUBLISHED OPINION

MANN, J. — Jeanette Stofleth sued Kristina Cosgrave and the 733 Lakeside

Condominium Association (Lakeside) for personal injury resulting from a car/pedestrian

crash. Stofleth appeals the trial court's order granting summary judgment and

dismissing Stofleth's claim against Lakeside. Stofleth contends that the trial court erred

in concluding her claim was insufficiently supported by evidence. We affirm.

## FACTS

On June 12, 2019, Stofleth left her condominium on the low level of the building

to walk to an adjacent city park. The main access to the park is on the street level, Lake

Street S.  Stofleth intended to access an adjacent park by cutting through the parking garage and then using a shortcut through an area of foliage and mulch separating the park from the lower level of the parking garage.  At the same time, Cosgrave was entering the parking garage and driving down the one-way garage ramps.  As Cosgrave rounded a corner, she struck Stofleth causing serious injury to Stofleth's leg and hip.

Stofleth also owns a vehicle and drove it often to and from the parking garage and regularly crossed paths with pedestrians.

Lakeside was constructed around 1968 and the City of Kirkland approved the construction plans.  Stofleth hired Gary Norris as an expert witness to assess Lakeside's potential fault.  Norris is a civil engineer with over 35 years of experience.  His experience includes reviewing projects for code compliance and compliance to general safety guidelines.  Norris testified that he visited the property twice, November 20, 2019, and March 25, 2020.  Norris did not measure any sight lines, take notes, or draw diagrams during his visits to the property.  Norris took four photographs of the parking garage that are included in his written report.  Norris's photographs do not include the site of the accident.

It is undisputed that the building did not violate any code requirements related to the parking garage that were in effect when the garage was constructed.  Lakeside has had no substantial construction that would require compliance with recent building codes.  Norris testified that Lakeside failed to provide a parking lot circulation pattern that would minimize or eliminate conflicts between pedestrians and vehicles.  He testified, however, that the garage forces the vehicle traffic to flow in a specific direction by default because of how the building was constructed.  Lakeside's expert stated that

vehicle traffic was directed in the parking garage with one-way aisles and ramps leading to and from the street and that nothing is unusual about the layout of the parking and pedestrian access to cars within the lower level of the parking garage.

Norris testified that a pedestrian walkway was required throughout the parking garage to the main building; however, he also testified that this requirement was in the current Kirkland Zoning Code which does not apply to Lakeside. Norris also testified that Lakeside failed to provide mirrors or electronic detection devices for parking garages with "sight distance" constraints. There is no code requirement for using mirrors, electronic detection, or notification devices in a parking garage.

Stofleth filed suit arguing that Lakeside was "negligent in the design, construction, and maintenance" of the garage by (1) failing to provide for adequate sight lines; (2) failing to provide for designated pathways; (3) failing to provide safety measures such as mirrors or electronic detection systems; (4) failing to adequately route traffic in a way safe for pedestrians; (5) failing to construct, maintain, and monitor a parking lot in a reasonably safe condition and manner for ordinary use; (6) failing to inspect the parking garage for unsafe conditions; and (7) by other acts of negligence to be determined in discovery. Lakeside moved for summary judgment arguing that no evidence supported a breach of duty by Lakeside. The trial court granted Lakeside's motion.

Stofleth appeals.

ANALYSIS

We review a ruling on summary judgment de novo.  Strauss v. Premera Blue Cross, 194 Wn.2d 296, 300, 449 P.3d 640 (2019).  On review, the appellate court engages in the same inquiry as the trial court.  Cary v. Mason County, 173 Wn.2d 697, 272 P.3d 194 (2012).  Summary judgment is appropriate when there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law.  CR 56(c); Ranger Ins. Co. v. Pierce County, 164 Wn.2d 545, 552, 192 P.3d 886 (2008).  "A genuine issue of material fact exists where reasonable minds could differ on the facts controlling the outcome of the litigation."  Ranger Ins. Co., 164 Wn.2d at 552.

Stofleth argues that summary judgment was improper because there were sufficient facts to support the notion that Lakeside was negligent in the design, construction, and maintenance of the garage by failing to (1) provide for adequate sight lines, (2) provide for designated pathways, and (3) provide safety measures such as mirrors or electronic detection systems.  We disagree.

To establish a claim for negligence, the plaintiff must prove "(1) the existence of a duty owed to the complaining party; (2) a breach thereof; (3) a resulting injury; and (4) a proximate cause between the claimed breach and resulting injury."  Pedroza v. Bryant, 101 Wn.2d 226, 228, 677 P.2d 166 (1984).  The moving party may support its motion for summary judgment by challenging the sufficiency of the plaintiff's evidence on any material issue.  Las v. Yellow Front Stores, Inc., 66 Wn. App. 196, 198, 831 P.2d 744 (1992).  If the claimant fails to show the existence of an element essential to that party's case and on which that party will bear the burden of proof at trial, then the moving party

is entitled to judgment as a matter of law and the trial court should grant the motion. Young v. Key Pharm., 112 Wn.2d 216, 225, 770 P.2d 182 (1989).

Norris claimed that Lakeside breached its duty of care because it failed to provide for adequate sight lines, provide for designated pathways, and provide safety measures such as mirrors or electronic detection systems. But Stofleth fails to present adequate evidence to establish Lakeside's duty to complete these actions.

First, the building and zoning codes in effect when Lakeside was constructed apply in this case. Lakeside's parking garage complies with the building and zoning codes in effect when it was constructed. Thus, there are no specific sight line, mirror or electronic detection system, or pedestrian crosswalk requirements. Second, Stofleth failed to establish a specific duty for Lakeside to adequately route traffic in the parking garage. Stofleth and Norris explained there was only one route that vehicles could travel in the parking garage. Stofleth herself drove in and out of the garage daily, and Lakeside advised her of the way traffic was routed into and out of the garage. There is no specific duty to route traffic in a different manner.

While our review is de novo, the trial court accurately explained the issue:

> But the critical question would be, where does the duty come from to do those things? It's not in the code. There's no evidence in the record that there've ever been a similar incident in the past that would put Lakeside on notice that there was a problem to be addressed that might lead to a duty to correct along the lines that you and Mr. Norris are suggesting. Absent that, where does the duty come from?

An owner of a building has a general duty to provide a safe premises. Fredrickson v. Bertolino's Tacoma, Inc., 131 Wn. App. 183, 189, 127 P.3d 5 (2005). The duty of care the possessor or property owes is based on the common law

classification of the person as an invitee, a licensee, or a trespasser. Assuming, without deciding, that Lakeside owed Stofleth the highest duty of care as an invitee, she failed to carry her burden on summary judgment to show that there were disputed issues of material fact. Lakeside is liable to an invitee if Lakeside: knows or by exercise of reasonable care would discover the condition and should realize that it involves an unreasonable risk of harm to the invitee; should expect that the invitee will not discover or realize the condition, or will fail to protect themselves against it; and fails exercise reasonable care to protect the invitee from the danger. Kamla v. Space Needle Corp., 147 Wn.2d 114, 125-26, 52 P.3d 472 (2002) (citing RESTATEMENT (SECOND) OF TORTS § 343 (AM. LAW INST. 1965)).

Stofleth relies on Boeing Co. v. State, 89 Wn.2d 442, 446, 572 P.2d 8 (1978), to argue that there may be a duty to implement technology even if not required by law. In Boeing, the court found that the State had a duty to implement technology to alert drivers that there was insufficient clearance for the vehicles under an underpass. The court explained, "[w]e acknowledge this [lack of duty] to be the general rule. However, there are extraordinary situations which may call for extraordinary measures in the exercise of reasonable care." Boeing, 89 Wn.2d at 447. The circumstances that created a heightened duty in Boeing are distinguishable. First, the State was operating and maintaining the safety of a public roadway, not a private parking garage. Second, the State was on notice that the underpass was unsafe:

> [T]he respondent's evidence showed a past history of frequent accidents in spite of warning signs posted. It further showed the appellant's awareness of the need for a more effective warning system and that in other similar circumstances governmental bodies had devised warning systems to meet the problem. This evidence was sufficient to take to the

jury the question whether the appellant exercised reasonable care under the circumstances.

Boeing, 89 Wn.2d at 448.

Unlike Boeing, here, the Lakeside private parking garage existed for 50 years without a single prior accident like this one. Stofleth offers no evidence that Lakeside knew, or with reasonable care would discover the condition, or realize it involved an unreasonable risk to people walking through the garage.

Stofleth also cites Ruff v. King County, 125 Wn.2d 697, 887 P.2d 886 (1995), for the proposition that mirrors or warning signs were necessary. In Ruff, our Supreme Court acknowledged that the duty to maintain a county road in a reasonably safe condition may require the posting of warning signs, but only where the conditions made the road inherently dangerous. 125 Wn.2d at 705. The Supreme Court affirmed the trial court's summary judgment for King County because the plaintiff failed to present evidence that the public roadway was inherently dangerous or deceptive. Ruff, 125 Wn.2d at 706-07. The plaintiff relied instead on expert testimony by a transportation engineering expert, who asserted that the roadway was an "unreasonably dangerous condition '[b]ecause all roadways can be hazardous' . . . [and] based his conclusion on what he stated as 'deficiencies relative to the industry standards.'" Ruff, 125 Wn.2d at 706 n.5. The court disregarded this expert stating that it "cannot find negligence based upon speculation or conjecture." Ruff, 125 Wn.2d at 706.

Like Ruff, Stofleth failed to present evidence to show that the parking garage was inherently dangerous except testimony from her expert, Norris. While Norris contended that the garage could be safer with modifications, he did not claim this area of the

parking garage was inherently dangerous or hazardous. Norris's opinion that the lack of a pedestrian walkway, mirror, or electronic detection system caused her injuries is speculative opinion.

Stofleth failed to present evidence creating a genuine issue of material fact that Lakeside knew, or by exercise of reasonable care would have discovered the dangerous condition and realized that it involved an unreasonable risk of harm. Summary judgment and dismissal of Lakeside was appropriate.

Affirmed.

Mann, J.

WE CONCUR:

Andrus, C.J.

Dwyer, J.